185 N.J. Super. 540 (1982)
449 A.2d 1343
JOSEPH BARTOLO, CHARLES NOTA BARTOLO, FRANK VECCHIO AND VINCENT LEPERA, PLAINTIFFS,
v.
BOARDWALK REGENCY HOTEL CASINO, INC., A/K/A BOARDWALK REGENCY HOTEL CASINO, INCORPORATED, JOHN DOE 1, JOHN DOE 2 AND JOHN DOE 3, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided May 28, 1982.
*542 Richard V. Wilde for plaintiffs (Romano, Hehl, Romankow & Wilde, attorneys).
James L. Cooper for defendants (Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, attorneys).
SKILLMAN, J.S.C.
A jury determined after a six-day trial that defendants, the Boardwalk Regency Hotel Casino, Inc. and two of its employees, had subjected the four plaintiffs, whom the casino suspected of being "card counters" (see Uston v. Resorts International Hotel, et al., 89 N.J. 163), to false imprisonment by restraining their freedom of movement until they produced identifications. The jury awarded plaintiffs damages of $160,000 against the Boardwalk Regency and an additional $24,000 against the individual defendants. All the damages were punitive since the plaintiffs did not undertake to prove any compensatory damages. A new trial as to damages only was granted to defendants unless plaintiffs agreed to accept a remittitur which would reduce their award of damages to $50,000 against the Boardwalk Regency and $2,000 against each of the individual defendants, these sums to be divided equally among plaintiffs.
Counsel for plaintiffs has advised the court that three plaintiffs wish to accept their shares of the reduced award against the Boardwalk Regency, which would be $12,500 each, but that a fourth plaintiff will insist upon a new trial on damages against the Boardwalk Regency. In addition, he advises that all four plaintiffs reject the remittitur and desire a new trial on damages against the individual defendants. Counsel for defendants urges that under the circumstances of this case the availability of a remittitur as an alternative to a new trial should be on an all or nothing basis; that is, all plaintiffs should be compelled to accept the remittitur as against all defendants or else submit to a new trial. Accordingly, both parties seek clarification of the scope of the remittitur option in the court's order granting a new trial.
*543 This motion for clarification requires consideration of the breadth of the court's discretion in affording plaintiffs the option of accepting a remittitur rather than pursuing a new trial and how that discretion should be exercised in this case. Research by counsel and the court has not disclosed any case authority either in this State or in any other jurisdiction which addresses whether a remittitur can be fashioned so that it must be accepted by every plaintiff in a multi-plaintiff case or whether a plaintiff may be required to accept a remittitur as against every defendant in a multi-defendant case. Therefore, it is necessary to address these questions in light of the general purpose of the remittitur option.
In Fisch v. Manger, 24 N.J. 66, 80 (1957), the court said that the practice of remittitur serves "the laudable purpose of avoiding a further trial where substantial justice may be attained on the basis of the original trial...." In a similar vein, the court observed in Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 331 (1970), that "[u]tilization of this device avoids the unnecessary expense and delay of a new trial." And in Baxter v. Fairmont Foods Co., 74 N.J. 588, 595 (1977), the court described the remittitur practice as "increasingly valuable to the modern administration of justice, confronted as the courts are today by unprecedented litigation caseloads." Therefore, the remittitur practice serves the interests of both litigants and the judicial system by eliminating the need for new trials. However, no New Jersey case suggests that a plaintiff has an absolute right to be offered a remittitur as an alternative to a new trial. Rather, the availability of the remittitur option is committed to the sound discretion of the trial court. Cf. Fisch v. Manger, supra; Keeley v. Big W Discount Supermarkets, Inc., 113 N.J. Super. 157 (App.Div. 1971); Mulkerin v. Somerset Tire Service, Inc., 110 N.J. Super. 173 (App.Div. 1970).
In determining the appropriateness in this particular case of conditioning the availability of the remittitur upon its acceptance by all plaintiffs as to all defendants, the nature of the *544 damages awarded to plaintiffs is significant. Those damages were solely punitive. Such damages are awarded "upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future." Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 454 (1977). Therefore, the amount of such an award is determined from the perspective of the defendant rather than of the plaintiff. For this reason, an award of punitive damages represents in a sense a windfall to plaintiff.
It is illuminating to compare the purposes of punitive damages and the criteria for determining their amount with the purpose and measure of compensatory damages. Ordinarily, awards of compensatory damages are separately determined for each individual plaintiff. For example, in a multi-plaintiff personal injury case each plaintiff has separate medical expenses, loss of earnings, pain and suffering, disability, etc., which form the basis of an individualized award of damages. Consequently, it is appropriate for a new trial on damages to be granted as to certain plaintiffs but denied as to others, if the court determines that only the damage awards to some plaintiffs are excessive. Cf. Bitting v. Willett, 89 N.J. Super. 196 (App.Div. 1965), remanded on other grounds, 47 N.J. 6 (1966). And where a new trial on damages, with the option of a remittitur, is awarded on the claims of more than one plaintiff, the objectives of the remittitur practice will be served by allowing each individual plaintiff to decide whether to accept a remittitur. Generally, the proofs of each individual plaintiff in support of a compensatory damage claim will be different and thus a retrial on the claim of only one plaintiff would be significantly less time consuming than retrial on the claims of all plaintiffs. Furthermore, since the purpose of such awards is to compensate for actual losses, each plaintiff should have the right to make an independent election between a remittitur and a new trial.
*545 On the other hand, punitive damages are not designed to compensate plaintiffs for their losses. Belinski v. Goodman, 139 N.J. Super. 351 (App.Div. 1976). Furthermore, the award of punitive damages in a case such as this does not require a separate calculation of damages for each plaintiff. Rather, punitive damages reflect the total penalty which must be imposed to punish and to deter the defendant. Leimgruber v. Claridge Associates, Ltd., supra. Therefore, the retrial of one plaintiff's claim would consume the same amount of court time as the retrial of all four plaintiffs' claims. Indeed, the number of plaintiffs should not have any material impact on the total amount of damages in this case since there is no logical reason to conclude that greater punitive damages would be awarded because four persons rather than one were involved in the incident of false imprisonment. Consequently, the purposes of the remittitur practice of avoiding unnecessary expense and delay for the parties and conserving court time would not be served by permitting some plaintiffs in this case to accept the remittitur and others to reject it.
In fact, a new trial in which only one plaintiff participated would raise difficult questions which actually might cause the new trial to take longer than the initial trial. A threshold question at the new trial would be the effect, if any, of the previous payment of $12,500 to each of the other plaintiffs. Since the objective of punitive damages is to set penalties in an amount sufficient to punish and deter defendant casino, it would appear that the punitive damages awarded the plaintiff who insisted upon a new trial would have to take into account the amounts already paid to the other plaintiffs who have accepted the remittitur. See 4 Restatement, Torts 2d, § 908 at 467, Comment (e) (1979) (punitive damage awards in prior suits is a factor to be considered by the trier of fact in determining the amount of such damages). However, it is not clear how the previous aggregate payment of $37,500 to the other plaintiffs should be taken into account. Should this be done by advising the jury of the prior award or by the trial judge molding the *546 verdict of the second jury? If the proper approach is the molding of the verdict in the second trial, how would that be done? Suppose the jury in the new damage trial determined that a punitive award of $40,000 was required to punish and deter the Boardwalk Regency? Should the verdict be molded to require the Boardwalk Regency to pay one-fourth of the verdict? Should the $37,500 previously paid to the other plaintiffs be deducted from the award? These questions need not be answered here[1] but their presence underscores the conclusion that permitting less than all the plaintiffs to accept a remittitur would not further the policies of the remittitur practice of avoiding expense and delay for the parties and conserving judicial resources.
Therefore, defendants will be granted a new trial unless all plaintiffs concur in accepting the remittitur.
The further question is whether plaintiffs can accept the remittitur as against the Boardwalk Regency while pursuing a new trial against the two individual defendants, Ervin Siska and *547 Dale Kershaw. There is a certain logic in the context of a punitive damage award in allowing a plaintiff to pursue a new trial against one defendant while accepting a remittitur on his claim against another. Punitive damages are separately imposed against each individual defendant, based upon the role of that defendant in the wrongdoing, his intent, his wealth and any mitigating circumstances peculiar to him. See La Bruno v. Lawrence, 64 N.J. Super. 570 (App.Div. 1960), certif. den. 34 N.J. 323 (1961). Therefore, the proofs to be presented at a retrial may be significantly different if one defendant is eliminated by the acceptance of a remittitur, thus simplifying and reducing the length of the retrial.
However, there would not be any conservation of the resources of either the parties or the court in this particular case if the remittitur were accepted solely on the claim against the Boardwalk Regency. The proofs pertinent to the imposition of punitive damages against Siska and Kershaw are precisely the same as those relating to the Boardwalk Regency, with the sole exception of the net worth of the Boardwalk Regency, which took less than a minute to present to the jury at the first trial.
The only significant difference between a damage trial with the Boardwalk Regency participating and one without its presence would be strategic. Whereas plaintiffs made the Boardwalk Regency the target defendant in the original action, urging that Kershaw and Siska were simply carrying out casino policy in detaining plaintiffs until they produced identifications, it may be assumed that at a retrial in which the Boardwalk Regency was not a party it would be urged that Kershaw and Siska exceeded their authority in falsely imprisoning the plaintiffs. I am convinced that the broad discretion which the court possesses to allow acceptance of a remittitur as an alternative to a new trial should not be exercised in a manner which encourages such strategic maneuvering.
Therefore, the order of remittitur will be framed to require all plaintiffs to accept the remittitur on their claims against all defendants or else a new trial will be ordered on damages only.
NOTES
[1] These questions are closely related to those which have been raised recently in other jurisdictions in connection with claims for punitive damages in products liability, anti-trust and securities fraud cases, where a defendant may be faced with numerous suits seeking punitive damages for the same wrongful conduct. See, e.g., Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832 (2 Cir.1976). See, generally, Ghiardi-Kircher, Punitive Damages  Law and Practice, §§ 5.40 to 5.47 (1981). Judge Friendly has commented that

The legal difficulties engendered by claims for punitive damages on the part of hundreds of plaintiffs are staggering ... We have the gravest difficulty in perceiving how claims for punitive damages in such a multiplicity of actions throughout the nation can be so administered as to avoid overkill. [Roginsky v. Richardson-Merrell, Inc., supra at 839-840]
The solution to this problem suggested by Judge Friendly (id. at 840, n. 11), and endorsed by some commentators (see, e.g., Putz and Astiz, "Punitive Damage Claims of Class Members Who Opt Out: Should They Survive?" 16 U. of San Francisco L. Rev. 1 (1981)), is to require all punitive damage claims based upon the same wrongful conduct to be pursued together in a single class action. See, also, Morris, "Punitive Damages in Tort Cases," 44 Harv.L.Rev. 1173, 1195 (1931). This suggestion parallels the conclusion reached here that all plaintiffs should be required to reach a joint decision whether to accept the remittitur or to pursue a new trial.