192 N.J. Super. 523 (1984)
471 A.2d 432
ALEXANDER A. CAPPIELLO AND PAULINE CAPPIELLO, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
RAGEN PRECISION INDUSTRIES, INC., EUGENE LOPATA AND GEORGE VAN DE WEGH, INDIVIDUALLY, JOINTLY AND SEVERALLY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1983.
Decided January 10, 1984.
*525 Before Judges MICHELS, KING and DREIER.
Kenneth P. Westreich argued the cause for appellants (Conway & Reiseman, attorneys; Gerald W. Conway and Sanford Silverman, of counsel; Kenneth P. Westreich, on the brief).
*526 Joseph F. Faccone, Jr. argued the cause for respondents (Joseph F. Faccone, Jr., on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendants appeal from a judgment entered upon a jury verdict in favor of plaintiff finding plaintiff's employment to have been terminated "maliciously and wrongfully so as to deprive him of a financial benefit." The decision implicates questions of the damages, if any, that are awardable depending upon our characterization of the case as one of breach of contract, abusive discharge of an employee at will, malicious interference with the employee's contract rights or some combination of those theories.
Alexander A. Cappiello (plaintiff) was an employee at will of defendant, Ragen Precision Industries, Inc. (Ragen). At the time of his firing his immediate superior was defendant George Van de Wegh, and the corporate president was defendant Eugene Lopata. Plaintiff was a commission salesman and alleges he was terminated as a result of an agreement between the individual defendants to appropriate his right to accrued commissions, as well as a substantial commission about to be paid as a result of his efforts to sell Ragen's data retrieval system to the Superior Court of New Jersey. Other commissions are in dispute, but it is clear from the jury's verdict that it accepted in toto plaintiff's allegations concerning the commissions owed to him. The evidence as to some of them will be discussed later, but the total jury award was $117,188.01. In addition, the jury awarded plaintiff punitive damages in the amount of $25,000, and additionally awarded plaintiff's wife, Pauline Cappiello, $10,000 per quod damages for loss of consortium and $10,000 in punitive damages. The award is against all defendants, and the individuals were found to have maliciously conspired to discharge the plaintiff. An additional individual defendant, the chairman of the board, was exonerated.

*527 I
Any discussion of the legal consequences of firing an employee at will in this State must start with an analysis of Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980). In that case the Supreme Court determined "[t]hat the common law of New Jersey should limit the right of an employer to fire an employee at will." Id. at 71. An employee at will "has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy ... Absent legislation, the judiciary must define the cause of action in case-by-case determinations... [U]nless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause." Id. at 72. The Court specifically noted that the action may be maintained in contract or tort or both, but in either case the employee must show that he was fired for refusing to perform an act that is "a violation of a clear mandate of public policy," and, insofar as the action is maintained in tort, punitive damages can be awarded "to deter improper conduct in an appropriate case, ... [which] remedy is not available under the law of contracts." Id. at 72-73. The Court was specific, however, in noting that "[o]ur holding should not be construed to preclude employees from alleging a breach of the express terms of an employment agreement." Id. at 73.
Thus the Supreme Court differentiated between the action for breach of the employment agreement and an action for abusive discharge by reason of an employee's refusal to follow the dictates of the corporation when such directive would violate "a clear mandate of public policy." Only within a narrow area may this abusive discharge action provide the basis both of compensatory and punitive damages, and outside such an area "the court can grant a motion to dismiss or for summary judgment." Ibid.
It is not disputed that, although plaintiff's employment was at will, he had an agreement with Ragen for the payment of commissions. Therefore, a breach of this agreement may be *528 separately recognized as a basis for compensatory damages, even under Pierce, notwithstanding that plaintiff's discharge must be upheld if he does not meet the Pierce abusive discharge test. The problem lies with the award of punitive damages. They are unavailable unless the Pierce rationale can be invoked or another basis found, such as the malicious interference with contractual advantage alleged by plaintiff.
The jury interrogatories firmly establish that plaintiff was terminated maliciously and wrongfully to deprive him of his commissions, and that this deprivation was the responsibility of the individual defendants. Although the trial court in the jury interrogatory unfortunately used the language "guilty of maliciously conspiring to discharge the plaintiff," from its context in the interrogatories and the whole of the court's charge it is clear that the court was referring merely to the general conduct and inquiring into which, if any, of the individuals had engaged in the action of depriving plaintiff of his commissions  rather than raising the tort of conspiracy as a separate basis of recovery. The judge in explaining this question noted the three individuals named and explained that two additional defendants had been excluded because they "had no part in any malicious act" and were "not responsible in any part for the discharge and no longer are in the case as individual defendants." The specific references in this explanation to the interrogatory question immediately preceding (concerning the malicious termination of plaintiff's employment so as to deprive him of his commissions), and the language of the question following (requesting that if the jury found "the plaintiff was terminated wrongfully and maliciously so as to interfere with an economic benefit" they should "set forth the amount of damages, if any, he sustained as a proximate result of his discharge including commissions, if any, due him,") show that the court was discussing a single subject matter throughout the three questions  the interference with plaintiff's commission rights. Defendants' claims that the *529 court committed error by not charging the elements of civil conspiracy and that plaintiff had not established a case of such conspiracy are without merit. The mere use of the word "conspiring" in the context noted and the failure of defendants to have objected at the appropriate time so that the judge could have reviewed this language (see R. 1:7-2), lead us to determine that the error, if any, was harmless.
We must next examine plaintiff's allegation of a malicious interference with contractual rights. In New Jersey we have described the tort succinctly as "one who unjustifiably interferes with the contract of another is guilty of a wrong." Harris v. Pearl, 41 N.J. 455, 461 (1964). Defendants claim that this tort is inapplicable here, since plaintiff must show the action of a third party. Prosser notes:
... The defendant's breach of his own contract with the plaintiff is of course not a basis for the tort. [Prosser, The Law of Torts (4 ed. 1971), § 129 at 934, and see cases at n. 9]
The interference with one's own contract is merely a breach of that contract. The tort requires the meddling into the affairs of another, in which case punitive damages may follow. As this court noted in Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437 (App.Div.), certif. den. 71 N.J. 503 (1976):
Penn-Jersey urges that the cause of action herein is equated with the tort of malicious interference with a contractual relationship where punitive damages may be appropriate. [Citations omitted]. We reject this thesis as inapplicable to the cause of action herein, where the claim is by one party against the other party to the contract and not against a third party interloper who has interfered with the contractual relationship. The latter claim is clearly a tortious wrong whereas the former is only contractual in nature. [141 N.J. Super. at 450]
Under this analysis it is clear that the punitive damage award against plaintiff's employer, Ragen, will not satisfy these standards, since one cannot interfere with one's own contract. The same is not true, however, of the individual defendants whom the jury found to have acted out of their own agreed to procure plaintiff's commissions for their own economic benefit.
*530 As to the responsibility of the corporation for punitive damages, however, we must return to the discussion in Sandler. The court noted that "[t]he addition of such stylized labels as `malice' and `maliciously' in the pleadings and pretrial order do [sic] not transform the essence of the action into a tortious wrong." Sandler, supra, 141 N.J. Super. at 451. The court recognized that facts could exist upon which punitive damages could be based:
We do not mean to conclude from the foregoing that the right to punitive damages should turn simply upon the form of action involved, namely, whether it is designated as a tort rather than a contract. There may arise a case involving such an aggravated set of facts that punitive damages might be appropriate regardless of the contract form of the cause of action and even though it may be beyond the scope of the recognized exceptions in the adjudicated cases. However, this is not such a case.
........
The mere fact that a court has found that the weight of the evidence is balanced in favor of one side rather than the other, or that the motivation of the breaching party was to advance his own interests and financial position, does not furnish the basis for a finding of the type of wrongful, malicious conduct which could support a claim for punitive damages even if the doctrine were extended to contract actions. [at 451-452]
As noted earlier, in Pierce the court was more definite stating that punitive damages is a remedy that "is not available under the law of contracts." Pierce v. Ortho Pharmaceutical Corp., supra, 84 N.J. at 72-73.
In our case, it was shown that plaintiff's superior and the president of the corporation acting for the corporation in order to secure sizeable commissions owing to plaintiff, terminated him. As tortfeasors they are personally liable, notwithstanding their corporate status. McGlynn v. Schultz, 95 N.J. Super. 412, 416 (App.Div.), certif. den. 50 N.J. 409 (1967); Trustees of Structural Steel v. Huber, 136 N.J. Super. 501, 505 (App.Div. 1975), certif. den. 70 N.J. 143 (1976). Yet the case law apparently provides no direct remedy against the corporation apart from compensatory damages. Since this is so, there is no incentive for a corporation to refrain from conduct such as that in this case. But there is little difference between what Ragen has *531 done here and any other failure of a party to pay what it knows is justly due. Punitive damages may be called for morally, but in light of the Pierce statement, they are not legally assessable here directly against Ragen. Cf. Garden State Community Hospital v. Watson, 191 N.J. Super. 225, 227 (App.Div. 1982), and Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358, 368 (App. Div. 1983).[1]
Even if there is no direct liability for punitive damages, Ragen can still be responsible for the same on a vicarious liability basis under the particular facts of this case. As was noted in Winkler v. Hartford Acc. and Ind. Co., 66 N.J. Super. 22 (App.Div.), certif. den. 34 N.J. 581 (1961):
The plaintiffs' action is against two corporations for the allegedly tortious acts of their employees. Exemplary damages may not be recovered against an employer for the wrongful act of an employee, unless the act was specifically authorized, participated in, or ratified by the master. Ketchum v. Amsterdam Apartments Co., 94 N.J.L. 7 (Sup.Ct. 1920); Kelleher v. Detroit Motors, 52 N.J. Super. 247 (App.Div. 1958). A corporate employer may be held for exemplary damages if its employee who committed the wrongful act or authorized or ratified it was so high in authority as to be fairly considered executive in character. Wendelken v. New York, S. & W.R. Co., 88 N.J.L. 270 (E. & A. 1913). See also Gindin v. Baron, 16 N.J. Super. 1 (App.Div. 1951), and 11 N.J. Super. 215 (App.Div. 1951). .. . [at 29]
Here there is little question that the actions of Eugene Lopata, Ragen's president, were those of an employee "so high in authority as to be fairly considered executive in character." Also, since Ragen here has participated in a single defense with its executives in an effort to retain plaintiff's commissions, we can well find a specific ratification of Lopata's and Van de Wegh's actions. Security Corp. v. Lehman Associates, Inc., 108 N.J. Super. 137, 146-147 (App.Div. 1970). Therefore, although not directly *532 responsible for the assessed punitive damages, Ragen is vicariously liable for the same.

II
Defendant urges that the per quod compensatory and punitive damages awarded in favor of Pauline Cappiello cannot stand. We agree. In most cases involving loss of consortium, damages have been awarded where the spouse has suffered physical injury by reason of another's negligence. See 41 Am. Jur.2d, Husband and Wife, § 458 at 384-385; cf. Prosser, Law of Torts (4 ed. 1971), § 125 at 894-896. A plaintiff may also recover in cases where the injury has been to the spouse's mental or emotional health. See Annotation, "Necessity of Physical Injury to Support Cause of Action for Loss of Consortium," 16 A.L.R. 4th 537 (1982). The one New Jersey case which seems to indicate that there may be a basis for a per quod claim other than for physical injury to the spouse (there involving malicious prosecution) is Zalewski v. Gallagher, 150 N.J. Super. 360 (App.Div. 1977). In Zalewski, the wife sued for loss of consortium on two separate claims, one arising from assault and one from malicious prosecution. The court decided only one loss of consortium claim could be maintained, but that either cause of action was a proper basis for the claim: "... each wrong involves a separate cause of action which would support its own per quod count...." Id. at 372. No case in New Jersey, however, extends such recovery to a claim founded solely on a spouse's economic loss, and we will not do so here.

III
The punitive damage claim in favor of Pauline Cappiello stands on a similar footing. Punitive damages are not awarded to compensate a plaintiff, but rather to punish a wrongdoer. They are determined "from the perspective of the defendant rather than of the plaintiff." Bartolo v. Boardwalk Regency Hotel Casino Inc., 185 N.J. Super. 540, 544 (Law Div. *533 1980). If defendants' conduct had been directed against Pauline Cappiello, she also might be entitled to a punitive damage award, but it would be for such separate conduct. Defendants' wrongdoing, economic in nature, cannot reasonably be said to have been so directed at Pauline Cappiello as to justify a separate award of punitive damages. We acknowledge that there is a split of authority on this subject. Compare Hammond v. North American Asbestos Corp., 105 Ill. App.3d 1033, 1040, 61 Ill.Dec. 843, 849-850, 435 N.E.2d 540, 546-547 (1982) and Hughey v. Ausborn, 249 S.C. 470, 478, 154 S.E.2d 839, 843 (1967), precluding such an award, with Wangen v. Ford Motor Co., 97 Wis.2d 260, 317, 294 N.W.2d 437, 465-466 (1980) and Sheats v. Bowen, 318 F. Supp. 640, 647-648 (D.Del. 1970) (applying Delaware law, but in the absence of a determination of this issue by the highest court of that state), allowing punitive damages. We here adopt the rule that only if the conduct engendering punitive damages is directed at more than one plaintiff, may the jury apportion punitive damages among such plaintiffs. Where the conduct has been directed at only one plaintiff there should be no such apportionment. The punishment is for the act, not the consequences thereof.
In another respect the punitive damage award cannot be sustained. The court awarded prejudgment interest on the punitive damage award. This was error. Zalewski v. Gallagher, supra, 150 N.J. Super. at 373; Belinski v. Goodman, 139 N.J. Super. 351, 359 (App.Div. 1976). We therefore vacate both the punitive damages and interest awarded to plaintiff, Pauline Cappiello, and the prejudgment interest on the punitive damages awarded to plaintiff, Alexander Cappiello.

IV
Defendant claims that the verdict was excessive, against the weight of the evidence and prejudicially tainted by improper *534 comments on summation by plaintiff's counsel. We have examined the basis for plaintiff's commission claims, and some are open to question. As to most of the commissions, the jury merely resolved in plaintiff's favor a dispute in fact as to whether credits had been given or not. For example, with respect to the Irving Trust sale, plaintiff had testified that the chairman of the board promised him that upon receipt of the order a commission would be paid. He claims to have been paid $7,500, but, when the deal fell through thereafter, defendants allegedly added $8,500 to plaintiff's advance commission account. From the total verdict returned, the jury obviously believed plaintiff's version of this event. With regard to Saudi Arabian sales, plaintiff testified that within the company, due to his preliminary work, he was considered the initiator of these sales and entitled to commissions, even though defendant Van de Wegh was given a $20,000 bonus for concluding the sales. Plaintiff notes that this payment is acknowledged not to have been commission to Van de Wegh, but the corporation's tangible appreciation for his having spent many weeks in Saudi Arabia. Plaintiff therefore concludes that the commissions were still due to him. While the evidence on this subject is weak, considering the jury's overall resolution of the credibility issues in plaintiff's favor, we will not disturb this single finding.

V
Although defendant has urged that the court failed to correct (as promised) a misstatement in plaintiff's summation, this failure was not called to the court's attention at the time of the charge. It was not so obviously prejudicial for us to take notice of it here. R. 1:7-2.
For the foregoing reasons the judgment appealed from is modified in part and, except as modified, is affirmed. The matter is remanded to the Law Division for the entry of such modified judgment. We do not retain jurisdiction.
NOTES
[1] Quaere: should the award of punitive damages turn on the form of business organization employing a plaintiff? Whether an employee is deprived of his commissions by a sole proprietor or by other corporate employees does not appear to be a fair basis of defining his legal remedies. Cf. Fortune v. National Cash Register Co., 373 Mass. 96, 364 N.E.2d 1251 (1977).