Pursuant to the Memorandum filed herein this day,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that defendant be and is hereby restrained and enjoined from: 1) rendering services directly or indirectly to or for ICN Pharmaceuticals, Inc., as a purchasing agent involved in the purchase of, or the selection of sources of supply for, chemicals which are also sold by Sigma, until November 22, 1985, or further Order of this Court, whichever first occurs; and 2) using or disclosing any trade secret or other confidential information that is the property of plaintiff which defendant acquired by reason of his employment with plaintiff.

On Motion to Alter or Amend

**IT IS HEREBY ORDERED** that plaintiff's motion to alter or amend the judgment be and is denied. In the opinion of this Court, the breadth of the April 3, 1985 injunction is appropriate.

John P. SIVELL

v.

CONWED CORPORATION.

No. Civ. H–83–1083 (PCD).

United States District Court, D. Connecticut.

April 3, 1985.

Joel M. Ellis, West Hartford, Conn., for plaintiff.

Jeffrey J. Mirman, Dennis L. Pieragostini, Tarlow, Levy Mandell & Kostin, West Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff, John P. Sivell (Sivell), contends in this action that his 1980 demotion and 1982 discharge by defendant, Conwed Corporation (Conwed), violated his rights under state and federal law. Conwed has moved dispositively as to all counts.[1] For the following reasons the court, on the present record, denies the motion as to Counts 2–6, but grants the motion as to Count 1.

*Facts*

The pertinent facts are as follows. Sivell, a Connecticut resident, was employed from June 1972 through August 1980 as Eastern Regional Sales Manager for Conwed, a manufacturer and supplier of acoustical products, incorporated in Delaware with its headquarters in Minnesota. Conwed's sales force was deployed among four national "regions" and thirty smaller areas or "territories." During Sivell's service as Eastern Regional Sales Manager with Conwed, the business of that office was conducted from regional headquarters in West Hartford, Connecticut.

In or shortly after August 1980, Sivell was removed from his position as Eastern Regional Sales Manager and reassigned as sales representative for one or more[2] of the Eastern Region's sales territories. While this contract may have been memorialized in writing, wholly or in part, (Sivell Affidavit ¶ 7), no such documentation is before the court.

Sivell promptly commenced his duties as sales representative, continuing to work in

---

1. While Conwed's motion is styled as a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), affidavits have been submitted in support of and in opposition to the motion as directed to the state law claims respecting plaintiff's 1982 discharge. The court having considered such material, the motion as to those counts is properly deemed a motion for summary judgment. *Samara v. United States,* 129 F.2d 594 (2d Cir.), *cert. denied,* 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942).

2. *Compare* Sivell Affidavit ¶¶ 5, 11 (describing his sales position as encompassing eighteen counties in Pennsylvania, ten in New Jersey and four in New York and characterizing it as the "Northern New Jersey, Western Pennsylvania *and* Lower New York State territory") (emphasis added) *with* the Affidavit of Sivell's National Sales Manager, I.L. Roberson, ¶ 6 (characterizing the sales territory as simply the "northern New Jersey territory") *and* Conwed's apparent lack of certainty as to Sivell's actual assignment (Reply Memorandum in Support at 2, n. 2).

part out of the West Hartford regional office and in part—as he had since joining Conwed in 1952—out of an office in his West Hartford residence. (Sivell Affidavit ¶¶ 12, 13). In or after January 1981, Conwed's Eastern Regional Headquarters was relocated from West Hartford to Cranston, New Jersey. (Roberson Affidavit ¶ 7, Sivell Affidavit ¶ 9). Thereafter, Sivell continued to use his West Hartford residence in the discharge of a substantial part of his duties as sales representative, particularly involving correspondence and other paperwork, most of which he accomplished on weekends. (Sivell Affidavit ¶¶ 12–18). In April 1982—then 62 years of age—Sivell was discharged from his employment with Conwed. Thereafter, a salesman 29 years of age was appointed to the position he had occupied.

In this action, Sivell seeks relief for both his 1980 demotion and 1982 discharge. With respect to his discharge, Sivell makes federal claims of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* (ADEA) (Count 1), and state law claims based upon alleged violations of an employee manual allegedly incorporated in Sivell's contract of employment (Count 2); breach of an implied covenant of good faith and fair dealing (Count 3); and fraud, deceit or misrepresentation arising from the allegation in Count 2 (Count 4). With respect to his demotion, Sivell alleges in parallel to Counts 2 and 3, breach of contract (Count 5) and breach of an implied covenant of good faith and fair dealing (Count 6). Diversity of citizenship is the jurisdictional basis for the five state law counts.

*Discussion*

## I. *ADEA Claim (Count 1)*

■ Defendant has moved to dismiss plaintiff's principal and sole federal count asserted under ADEA, on grounds that rather than pleading the factual specifics of any presumed unsuccessful administrative agency challenge to defendant's practices, the complaint asserts merely that "plaintiff has fully complied with the provisions of 29 U.S.C. § 626(d)." (Complaint, Count 1 ¶ 9). While the statute may not in terms require anything further, clearly once defendant has called into question plaintiff's satisfaction of the prerequisites to suit, it is incumbent on plaintiff to demonstrate the satisfaction of these prerequisites.

Defendant properly notes (Memorandum in Support at 15) that without sufficient factual specificity in the complaint to establish plaintiff's compliance with the administrative prerequisites to an ADEA claim, "the Court may well have to wait until discovery is completed to ascertain whether [the ADEA claim] ... is properly before it. Such a delay subverts judicial economy and expeditious decision-making."

Plaintiff not having seized upon the instant opportunity to rectify this deficiency, the court shall grant the motion to dismiss Count 1 but without prejudice to plaintiff, within fifteen (15) days hereof, to amend his complaint.

## II. *The State Law Discharge Claims (Counts 2, 3 and 4)*

Invoking diversity jurisdiction, Counts 2, 3 and 4 assert causes of action sounding respectively in breach of contract, breach of an implied covenant of good faith and fair dealing, and fraud, deceit or misrepresentation, all stemming from the asserted failure of Conwed in its discharge determination to adhere to certain standards, conditions and procedures contained in an employee manual entitled "Personnel Policy and Procedure, Management Guide."[3]

---

**3.** The parties have not made this manual available for the court's consideration in conjunction with the pending motion. The summary of the pertinent provisions in the complaint, Count 2 ¶¶ 5–8, Count 3 ¶¶ 5–10, Count 4 ¶¶ 5–9, indicates that the manual provides for the exhaustion of a series of discussions, action plans and monitoring dates before Conwed's Director of Administration may terminate a salaried employee for a serious performance problem. For purposes of this motion, it is assumed that this synopsis accurately characterizes the manual as then in effect and that plaintiff was terminated in violation of these provisions.

Conwed has moved for summary judgment as to these three counts.

■ Under the Connecticut choice-of-law rules which this court must apply, *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), Conwed asserts, first, that causes of action alleged in Counts 2, 3 and 4 must all be deemed to sound in contract; second, that the prevailing Connecticut contract choice-of-law rule requires the application of New Jersey law to these counts; and third, that New Jersey law precludes recovery thereunder.

While the court agrees, as an initial matter, with Conwed's characterization of Count 4 as sounding in contract,[4] no less than the concededly contractual claims raised in Counts 2 and 3, it is deemed premature to survey New Jersey employment contract and wrongful discharge law,[5] for the present record is insufficient upon which to determine whether Connecticut's prevailing contract choice-of-law dictates the application of Connecticut law or of New Jersey law.

The parties agree that the Connecticut contract choice-of-law rule provides that the manifested intent of the parties governs the question of controlling law no less than it does other aspects of the contract. Thus:

> The general rule is that the validity and the construction of a contract are determined by the law of the place where the contract was *made. But* if the contract is to have its *operative effect* or *place of performance* in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of opera-

tive effect or performance governs its validity and construction.

*Breen v. Aetna Cas. & Sur. Co.*, 153 Conn. 633, 637, 220 A.2d 254 (1966) (emphasis added), quoted in *Whitfield v. Empire Mut. Ins. Co.*, 167 Conn. 499, 506, 356 A.2d 139 (1975); *see also Jenkins v. Indemnity Ins. Co.*, 152 Conn. 249, 253, 205 A.2d 780 (1964); *Graham v. Wilkins*, 145 Conn. 34, 40, 138 A.2d 705 (1958); *Levy v. Daniels' U–Drive Auto Renting Co.*, 108 Conn. 333, 338, 143 A. 163 (1928).

■ The parties are further in essential agreement[6] that Sivell's contract as sales representative "was made"—for purposes of the choice-of-law rule—in Connecticut, where he accepted the offer first communicated to him at Conwed's Minnesota headquarters, where he had been informed of his being relieved of his former duties as Eastern Regional Sales Manager. (*See* Sivell Affidavit ¶¶ 7, 8; Memorandum in Opposition at 1–2). At issue, then, is whether the second prong of the choice-of-law rule points toward the law of a jurisdiction other than Connecticut as being controlling, i.e. whether the contract had its "operative effect" or "place of performance" other than in Connecticut.

On the present record, i.e. in the absence of any writings embodying in whole or part the terms of Sivell's 1980 contract as a salesman, and given the widely conflicting factual assertions contained in the affidavits on file, particularly with regard to the nature and geographic scope of Sivell's employment obligations thereunder, *see* n. 2 *supra*, the court is unable soundly to determine as without contradiction Conwed's as-

---

**4.** While Sivell devotes substantial attention, *see* Memorandum in Opposition at 6–12, to the proposition that the claim in Count 4 that Conwed's "intentional non-fulfillment [of the above-noted provisions of the employee manual] constituted fraud, deceit or misrepresentation" (Complaint, Count 4 ¶ 8), is one sounding in tort, the court concurs with Conwed that "[t]he interference with one's own contract is merely a breach of that contract." *Cappiello v. Ragen Precision Indust., Inc.*, 192 N.J.Super. 523, 471 A.2d 432 (1984). To the extent Sivell seeks in Count 4 to state a claim sounding in tort— and thus allowing, in appropriate circumstances, the award of punitive damages—apparently

for the identical contractual breach upon which Counts 2 and 3 are premised, such claim is dismissed.

**5.** *See, e.g., Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980) (recognizing a cause of action for wrongful discharge of an at-will employee where the discharge contravenes a clear mandate of public policy).

**6.** Conwed's token resistance to this proposition is noted. *See* Reply Memorandum in Support at 4–5.

sertion that "it is clear that the parties intended that the contract ... be governed by the laws of New Jersey, inasmuch as the principal place of performance was to be in New Jersey" (Reply Memorandum in Support at 5) or that of Sivell, "our contract was a Connecticut contract for services to be performed in significant part ... in Connecticut [and] ... in at least three other jurisdictions." (Memorandum in Opposition at 4).

The motion for summary judgment as to Counts 2, 3 and 4, subject to n. 4 *supra,* is, therefore, denied without prejudice.

### III. *The State Law Demotion Claims (Counts 5 and 6)*

#### A.

■ Counts 5 and 6 parallel the claims asserted in Counts 2 and 3.[7] Based on asserted failures to comply with the employee manual, the claims are for breach of contract and for breach of an implied covenant of good faith and fair dealing, respectively. As there is no dispute but that Sivell's contract as Eastern Regional Sales Manager was made in, and had its principal place of performance or operative effective in, Connecticut, Connecticut law governs these two counts.

While the Connecticut Supreme Court has never held that statements in employee handbooks or manuals create valid contractual rights, protecting an employee in an otherwise terminable-at-will employment contract, it has nonetheless recently embraced one form of wrongful discharge action, *see Sheets v. Teddy's Frosted Foods,* 179 Conn. 471, 427 A.2d 385 (1980); Conn. Gen.Stat. § 31–51m ("whistle-blowing" statute), and acknowledged that courts in other jurisdictions:

> have occasionally found an implied promise to discharge only for cause ... in the representations contained in an employee relations manual or handbook.

*Magnan v. Anaconda Indust., Inc.,* 193 Conn. 558, 564, 479 A.2d 781 (1984), citing *Greene v. Howard Univ.,* 412 F.2d 1128 (D.C.Cir.1969); *Leikvold v. Valley View Hosp.,* 141 Ariz. 544, 688 P.2d 170 (1984); *Toussaint v. Blue Cross,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982); *see also* Lopatka, *The Emerging Law of Wrongful Discharge—A Quadrennial Assessment of the Labor Law Issue of the 80's,* 40 Bus.Lawyer 1, 17, n. 92 (1984) ("The prevailing law in ... 18 states ... recognizes, to various extents and with different thresholds, a wrongful discharge action for breach of an implied employment contract arising from employee, other personnel policies, and/or oral or written representations regarding job security.").

Connecticut Superior Courts, *see, e.g., Bilbao v. Wyatt, Inc.,* 9 Conn.L.Trib. No. 45 at 14 (Super.Ct. 6/6/83), and federal district courts sitting in diversity, *see, e.g., Beckwith v. Raymark Corp.,* Civil No. B–82–149 (D.Conn. 2/25/85); *Carlson v. Board of Educ.,* Civil No. B–83–751 (D.Conn. 11/18/84), have not precluded plaintiffs from attempting to prove that representations in employee manuals or handbooks become part of an employment contract. Especially where, as here, all well-pleaded factual allegations are taken as true, and neither the contract nor the representations allegedly made a part of it have fully been put before the court, it would be improper to preclude Sivell from attempting to prove this "implied in fact" claim. The motion to dismiss as directed to Count 5 is accordingly denied.

#### B.

■ The complaint's sixth count involves the covenant of good faith and fair dealing, which the law implies in all contracts, *see* 2 Restatement (Second) Contracts § 205 (1979); *Magnan,* 193 Conn. at 568–72, 479 A.2d 781, as "a rule of construction designed to fulfill the reasonable expectations

---

**7.** The court rejects Conwed's assertion that any rights secured an employee terminable-at-will by Connecticut law inure to the sole benefit of discharged employees, rather than employees demoted, discriminated against or otherwise penalized short of actual discharge.

of the contracting parties as they presumably intended." *Id.* at 567, 479 A.2d 781.

Here, as in *Beckwith*, the contours of the actual employment contract, i.e. whether or not the employee manual was in fact incorporated in the contract of employment, are not established. In such circumstances, as in *Beckwith*, the reasonable expectations of the parties—which is the "essence" of the covenant of good faith and fair dealing, *Magnan*, 193 Conn. at 572, 479 A.2d 781—with regard to their contract cannot be determined. The motion to dismiss Count 6 is accordingly denied.

For the foregoing reasons, Conwed's motions to dismiss Counts 5 and 6 and for summary judgment as to Counts 2, 3 and 4 are denied. Subject hereto, the motion to dismiss Count 1 is granted.

SO ORDERED.