**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1024-17T4

DAVID LERNER and
FERNANDO PICARIELLO,

     Plaintiffs-Appellants,

v.

CITY OF JERSEY CITY and
STEVEN FULOP,

     Defendants-Respondents.

_____

Submitted December 17, 2018 – Decided April 2, 2019

Before Judges Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-5011-15.

Mandelbaum Salsburg, PC, attorneys for appellants (Steven I. Adler and Jennifer E. Presti, on the brief).

Calcagni & Kanefsky, LLP, attorneys for respondent Steven Fulop; Peter J. Baker, Corporation Counsel, attorney for respondent City of Jersey City (Martin B. Gandelman, Kevin J. Musiakiewicz and Scott W. Carbone, Assistant Corporation Counsel, on the joint brief).

PER CURIAM

This matter arises from the inability of plaintiffs David Lerner and Fernando Picariello to obtain employment with defendant City of Jersey City following their loss of employment with the Jersey City Parking Authority (JCPA), which was dissolved by the administration of the newly elected Jersey City Mayor, defendant Steven Fulop. Plaintiffs appeal the May 5, 2016 order granting defendants' motion to dismiss their complaint which alleged political patronage discrimination in violation of the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, and wrongful discharge in violation of public policy pursuant to Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980). Plaintiffs also appeal the August 19, 2016 order denying their motion for reconsideration. We affirm because we conclude that, as a matter of law, plaintiffs' allegations did not establish Pierce and tortious interference claims nor violations of the CRA.

I

In June 2013, Fulop was elected mayor defeating incumbent Jeremiah Healy. Shortly thereafter, fulfilling one of his campaign promises, Fulop's administration applied to the New Jersey Civil Service Commission

(Commission) to dissolve the JCPA[1] and have its employees absorbed as civil service employees into Jersey City's Department of Public Safety.

In the Commission's Final Administration Action on August 1, 2014 (2014 FAA), the abolishment of the JCPA was approved. The Commission further determined that eighty-six JCPA employees, who were employed with the agency for at least one year before July 1, 2014, would be formally reassigned to the Department of Public Safety. A month or two prior to the 2014 FAA, JCPA employees were notified of their new civil service job titles and proposed positions with the Department of Public Safety, based upon a review by the Commission's Division of Classification and Personnel Management of their prior job classifications and years of service with the JCPA.

Plaintiffs did not receive a similar welcoming notification. In a November 14, 2014 letter, Jersey City advised them that the JCPA would dissolve on January 1, 2015, and they would not be offered positions with the Department of Public Safety. Plaintiffs did not have written employment agreements with the JCPA. At the time, Lerner, JCPA's Assistant CEO and Acting Director of Enforcement, had twenty years of service with the agency. Picariello, with

_____

[1] JCPA, a non-civil service agency, was an autonomous Jersey City agency created in 1949 pursuant to N.J.S.A. 40:11A-1 to enforce Title 39 violations and Jersey City ordinances.

about two years of less service, held the position of Acting Special Assistant-Insurance. Plaintiffs' last workday was on or about December 21, 2014; they were not provided any severance or advised of other job opportunities with the Jersey City government.

Seeking relief from the Commission, plaintiffs challenged their termination claiming civil service laws protected their employment with the JCPA. In response, Jersey City asserted that "[d]ue to administrative issues, including the [c]ity [c]ouncil's need to vote on a budget that would keep the JCPA open, that absorption [of JCPA employees] did not occur until January 1, 2015" and that any references in the 2014 FAA to July 1, 2014, must be read as January 1, 2015. As for plaintiffs, Jersey City noted that they never became Jersey City employees because after a review of the JCPA employees' job functions, it determined that plaintiffs' "job functions were duplicative of positions already filled by permanent [Jersey City] employees."

On August 21, 2015, the Commission issued a Final Administration Action (2015 FAA) concluding that since Jersey City did not appoint plaintiffs to positions, it was "without jurisdiction to review their claims." Plaintiffs did not appeal that determination.

A-1024-17T4

Having previously served Jersey City with a tort claims notice under N.J.S.A. 59:8-8, plaintiffs instead sought relief in the Law Division alleging Pierce claims and violations of Article I, Paragraphs 5 and 6 of the New Jersey Constitution under the CRA, on the basis that Jersey City and Fulop fired them from the JCPA and refused to hire them to work for the municipal body solely due to their support of Healy in the mayoral election.

In lieu of filing an answer to the complaint, defendants filed a Rule 4:6-2(e) motion to dismiss the complaint. Plaintiffs cross-moved to amend their complaint to add a count of tortious interference with their contractual relations with the JCPA and their prospective economic advantage.

The motion judge granted defendants' motion to dismiss, placing his reasons on the record. He ruled since plaintiffs had no legal right to their positions with the abolished JCPA, and Jersey City never hired them as determined by the Commission in its 2015 FAA, they could not establish claims under Pierce or the CRA. Although the judge granted plaintiffs' motion to amend their complaint to add a claim of tortious interference with regard to the JCPA, he did not allow plaintiffs to add a claim of tortious interference against Fulop. Noting plaintiffs were not employed by Jersey City, he determined, as a matter of law, to the extent that Fulop interfered with plaintiffs' relationship, he

did so as the mayor and as a representative of Jersey City, therefore, the tripartite relationship needed to establish a tortious interference claim could not be formed. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 752 (1989). Thereafter, the parties entered into a stipulation dismissing the remaining portion of plaintiffs' tortious interference claims against JCPA, which disposed of the complaint's remaining claims and entitled plaintiffs to appeal as of right.

II

Initially, plaintiffs argue the judge erred in relying on defendants' submission of the 2015 FAA, which they did not mention or rely upon in their complaint; thereby improperly converting the motion to dismiss to a summary judgment motion. In doing so, plaintiffs maintain the judge failed to adhere to guidelines governing summary judgment motions; making factual findings without allowing them the ability to conduct discovery.

Defendants disagree. They contend the judge did not convert the motion to dismiss to a summary judgment motion by relying upon the 2015 FAA because he acted within his discretion under Rule 4:6-2 and its federal counterpart a Fed. R. Civ. P. 12(b)(6) motion, to rely upon a document that is "integral to . . . the complaint 'may be considered' without converting the motion

[to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in the original). Defendant also maintains that because the 2015 FAA is a public record that prompted plaintiffs' claims, it was appropriate for the judge to rely upon it in deciding the motion to dismiss. Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005).

We look at the following principles to guide us. Appellate review of a trial court's ruling on a motion to dismiss is de novo. Watson v. New Jersey Dep't of Treasury, 453 N.J. Super. 42, 47 (App. Div. 2017). Since our "review is plenary[,] . . . we owe no deference to the trial judge's conclusions." State v. Cherry Hill Mitsubishi, 439 N.J. Super. 462, 467 (App. Div. 2015) (citation omitted). In considering a motion under Rule 4:6-2(e), courts must accept the facts asserted in the complaint and should accord the plaintiff all favorable inferences. Watson, 453 N.J. Super. at 47. "A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'" Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). "This standard requires that 'the pleading be searched in depth and with

liberality to determine whether a cause of action can be gleaned even from an obscure statement.'" Ibid. (quoting Seidenberg v. Summit Bank, 348 N.J. Super. 243, 250 (App. Div. 2007)).

Generally, when the trial court has considered matters outside the pleadings, the motion to dismiss on the failure to state a claim becomes one for summary judgment. See R. 4:6-2. Our Supreme Court has nevertheless stated that, "[i]n evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Banco Popular N. Am, 184 N.J. at 183 (emphasis added.) (quoting Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004)). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." Lum, 361 F.3d at 221 n.3; see also In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 ("the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated 'where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'"). Thus, in reviewing a motion under Rule 4:6-2(e), a court may consider documents referred to in the complaint, matters of public record, or

documents explicitly relied on in the complaint, without converting the motion to dismiss into one for summary judgment. See N.J. Citizen Action, Inc. v. Cnty. of Bergen, 391 N.J. Super. 596, 605 (App. Div. 2007).

Here, the motion judge properly applied the standards of Rule 4:6-2(e). Although plaintiffs may not have expressly cited the 2015 FAA in their complaint, the allegations therein challenge the facts and determinations in the 2015 FAA, of which plaintiffs were aware. As the determinations of the 2015 FAA were legal in nature, it was within the discretion of the motion judge to take judicial notice of the 2015 FAA, whether requested or not. N.J.R.E. 201(a), (c).

There is no question the 2015 FAA – a public record – denied plaintiffs their right to pursue claims against defendants because it determined they were never employed by Jersey City. Thus, the 2015 FAA was integral to plaintiffs' complaint because it adjudicated the motion judge's analysis of their right to pursue Pierce or CRA claims.

Pierce Claims

A Pierce claim is based upon our Supreme Court's recognition "that an [at-will] employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." Pierce, 84 N.J. at 72.

"The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." Ibid.

Because plaintiffs were never employed by Jersey City, as determined by the 2015 FAA that went unappealed, we thus agree with the motion judge that they do not have a cause of action under Pierce against Jersey City. And, since a Pierce claim only lies against an employer, not individual employees, the claim was properly dismissed as to Fulop. See O'Lone v. New Jersey Dep't of Corr., 313 N.J. Super. 249, 256 (App. Div. 1998).

There is an additional basis to dismiss the Pierce claims against defendants. As defendants contend, plaintiffs' claims are more aligned with a failure to hire claim. Plaintiffs' allege in their complaint that "defendants' decision not to hire them as Jersey City employees was against public policy." However, the failure to hire is not a cause of action that is recognized under Pierce. See Sabatino v. Saint Aloysius Parish, 288 N.J. Super. 233, 240 (App. Div. 1996) (holding that school's failure to hire the principal of a parochial school, did not state a claim under Pierce).

We further conclude there is no merit to plaintiffs' contention that even if they were not technically hired by Jersey City, the municipality effectively terminated their employment and they should still be able to pursue their Pierce

claims. Granted their positions with the JCPA were terminated, as were all of the agency's positions when the 2014 FAA approved Jersey City's application to abolish the JCPA for fiscal efficiency purposes. However, as the judge found, plaintiffs had no right to employment with the JCPA because it ceased to exist as of January 1, 2015. The decision not to hire plaintiffs was within the defendants' discretionary authority protected by the TCA under N.J.S.A. 59:2-3 and N.J.S.A. 59:3-2. Jersey City explained that plaintiffs were not hired because before the JCPA was absorbed, a review of the JCPA employees' job functions determined that plaintiffs' positions were duplicative of positions performed by permanent Jersey City employees and they were therefore not offered employment with Jersey City.

CRA Claims

Plaintiffs claimed that violations of their constitutional rights under the CRA are based upon their assertion that defendants abolished their positions with the JCPA and denied them employment with Jersey City due to their decision not to back Fulop's election campaign.

The CRA provides in pertinent part that:

> Any person who has been deprived of . . . any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or

A-1024-17T4

immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion <u>by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief</u>.

[N.J.S.A. 10:6-2(c) (emphasis added).]

The CRA thus provides a cause of action to any person who has been deprived of any rights under either the federal or state constitutions by a "person" acting under color of law. N.J.S.A. 10:6-2(c). The CRA, modeled after the Federal Civil Rights Act, 42 U.S.C. § 1983, provides "a remedy for the violation of substantive rights found in our State Constitution and laws." <u>Brown v. State</u>, 442 N.J. Super. 406, 425 (App. Div. 2015) (quoting <u>Tumpson v. Farina</u>, 218 N.J. 450, 474 (2014)).

To support plaintiffs' theory of "revenge" and "political reprisal," Picariello alleges that Fulop refused to speak to him after Fulop asked him who he supported for mayor and he replied Healy. Lerner alleges that Fulop knew he was politically active as a ward coordinator, and provided financial support to Healy's campaign. Finally, as an alternative to dismissing their complaint with prejudice, plaintiffs argue the judge should have allowed them to amend their complaint to allege threats, intimidation or coercion by Fulop. <u>Lederman v. Prudential Life Ins.</u>, 385 N.J. Super. 324. 349 (App. Div. 2006) (complaint

12

should not be dismissed if an actionable theory may be articulated by amendment of the complaint).

For essentially the same reasons that we determined the Pierce claims were correctly dismissed, we conclude the CRA claims were appropriately dismissed. Plaintiffs could not establish a violation of CRA because they had no statutory right to continued employment nor a substantive due process claim when a decision was made to fire or hire them. We agree with defendants that Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 468 (App. Div. 2012) is instructive. In determining whether the trial judge should have granted the defendants' motion for judgment notwithstanding the verdict to dismiss plaintiffs' CRA substantive due process claim, this court explained in Filgueiras that:

> "[A]n employee hired at will has no protected interest in his employment and may not prevail on a claim that his or her discharge constituted a violation of property rights." Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 355 (App.Div.1993) (citing Bd. of Regents v. Roth, 408 U.S. 564, 578 (1972)). In Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000), the court went further by concluding that "tenured public employment is [not] a fundamental property interest entitled to substantive due process protection."
>
> [426 N.J. Super. at 469-470 (alterations in original).]

These principles apply here to the at-will employed plaintiffs, who enjoy no statutory or contractual term of appointment. Stated simply, plaintiffs do not have a protected property interest in continued employment at JCPA. Likewise, as the Commission held, plaintiffs were never employed by Jersey City; thus, they have no claim under the CRA against the municipality and its mayor for not being appointed to positions. We further conclude there was no basis to allow plaintiffs to amend their complaint to allege that defendants interfered with any of plaintiffs' substantive rights by way of "threats, intimidation, or coercion." Since plaintiffs had no right to employment at the JCPA nor right to employment with Jersey City, an amendment to the complaint would have been futile because the amended claims would have failed. See Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006).

Tortious Interference Claims

Plaintiffs argue that Fulop's tortious interference satisfied the tri-partite relationship needed to sustain their claim that he tortiously interfered with their prospective economic advantage when they were not hired by Jersey City. Cappiello v. Ragen Precision Industries, Inc., 192 N.J. Super. 523 (App. Div. 1984). Plaintiffs rely upon Printing Mart-Morristown, where the Court held that a cause of action for tortious interference regarding contracts cannot be directed

14

against a defendant who is a party to a contract, and this rule extends to agents of a corporation. 116 N.J. at 752-53. In addition, acts committed by an agent outside the scope of his employment or agency may satisfy the tripartite relationship required for a tortious interference claim. See Silvestre v. Bell Atlantic Corp., 973 F.Supp. 475, 486 (D.N.J. 1997).

These principles apply here, according to plaintiffs, because Fulop was an agent of Jersey City, who as alleged in their complaint "wanted Jersey City to absorb the JCPA so that he could fire those JCPA employees that had not supported his campaign and appoint people who had supported him." In addition, plaintiffs contends their complaint also alleged that because Fulop's actions were taken for his own personal and political gain, he was an outsider to the transaction, and thereby a third party "interloper" sufficient to form the tripartite relationship. Furthermore, plaintiffs argue that by acting for his own "personal motives," "beyond his authority" or "not in good faith in the [City's] interest," Fulop can be found liable. As for Jersey City, plaintiffs contend it may be vicariously liable for the tortious interferences by ratifying Fulop's unlawful actions. See Cappiello, 192 N.J. Super. at 530-31. We are unpersuaded.

To establish a prima facie claim of tortious interference, a plaintiff must establish four criteria. One, a complaint must allege facts that show some protectable right – a prospective economic or contractual relationship. Printing Mart-Morristown, 116 N.J. at 752. Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some "reasonable expectation of economic advantage." Harris v. Perl, 41 N.J. 455, 462 (1964). A complaint therefore, must demonstrate that a plaintiff was in "pursuit" of business. Printing Mart-Morristown, 116 N.J. at 752.

Two, the complaint must allege facts claiming that the interference was done intentionally and with "malice." Kopp, Inc. v. United Technologies, Inc., 223 N.J. Super. 548, 559 (App. Div. 1988). Malice is defined to mean that the "harm was inflicted intentionally and without justification or excuse." Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563 (1955).

Three, the complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain. Printing Mart-Morristown, 116 N.J. at 752-53. A plaintiff must show that "if there had been no interference[,] there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." Leslie Blau Co. v. Alfieri, 157 N.J. Super. 173, 185-86 (App. Div. 1978).

16

Four, the complaint must allege that the injury caused damage. <u>Norwood Easthill Assocs. v. Norwood Easthill Watch</u>, 222 N.J. Super. 378, 384 (App. Div. 1988).

Plaintiffs' complaint does not establish a prima-facie claim of tortious interference because they can only satisfy the first and fourth requirements. Their complaint alleges they were initially told their abolished JCPA positions would be absorbed by Jersey City to allow them continued employment, thus they had a reasonable expectation of economic advantage. And, since they did not obtain jobs with Jersey City, they incurred damages of lost wages. Plaintiffs' complaint, however, does not satisfy the second and third requirements because it failed to allege facts that led to the conclusion that had it not been for Fulop's alleged intentional interference, they would have received the anticipated economic benefits.

In addition, on a motion to amend under <u>Rule</u> 4:9-1 it is within the "sound discretion" of the judge to deny a motion if such amendment would be futile. <u>See</u> <u>Bustamante v. Borough of Paramus</u>, 413 N.J. Super. 276, 298 (App. Div. 2010). As the judge had already determined plaintiffs were never employed by Jersey City, we conclude it was reasonable for him to deny plaintiffs' request to

amend the complaint to add a tortious interference claim against defendants because it would have been a futile claim.

Because we conclude that the motion judge did not err in dismissing plaintiffs' complaint, he properly exercised his discretion in denying plaintiffs' motion for reconsideration. R. 4:49-2; Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

To the extent we have not addressed arguments herein, we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION