Nancy REILLY; John Reilly; Ann Dolphin; Fred P. Warner, as Administrator Ad Prosequendum on Behalf of the Estate of Deceased Plaintiff Ethel Warner; Fred Warner; Jule Bonner; James Bonner; Kathleen Burness; Robert Burness; Phyllis Lewis; Bernard Lewis; Edith Delcher; and Ernest Delcher, Plaintiffs,

v.

PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant.

Civ. A. No. 84–4708 (SSB).

United States District Court, D. New Jersey.

Feb. 10, 1987.

726

Press & Long by Richard Press, Northfield, N.J., for plaintiffs.

Epstein, Becker, Borsody & Green by Stephen R. Mills, New York City, Priscilla J. Smith, Prudential Property and Cas. Ins. Co., Holmdel, N.J., for defendant.

## OPINION

BROTMAN, District Judge:

This action concerns the discharges of seven former employees of Prudential Property and Casualty Insurance Company ("PRUPAC" or "defendant") when the company eliminated the classification of "reduced-hour" employees. Plaintiffs include Nancy Reilly, Ann Dolphin, Jule Bonner, Kathleen Burness, Phyllis Lewis, and Edith Delcher, and Fred Warner as administrator on behalf of Ethel Warner ("Plaintiffs"). Several of their husbands are also plaintiffs but will be referred to in this opinion as "plaintiffs' husbands." Plaintiffs' husbands include: John Reilly, Fred Warner, James Bonner, Robert Burness, Bernard Lewis and Ernest Delcher.

This action was commenced by plaintiffs in Superior Court, Atlantic County, seeking redress for violations of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of The Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.*, The Equal Pay Act, 29 U.S.C. § 206, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and pendent New Jersey state tort claims (*i.e.,* wrongful discharge, tortious interference with an advantageous economic relationship, and loss of consortium). This action was removed by defendant to this court on the basis of federal question jurisdiction.

Presently before the court is a motion by defendant for summary judgment. For the reasons set forth below, the court will grant in part and deny in part defendant's motion.

*Factual Background*

In 1975, PRUPAC's Linwood, New Jersey office added a third classification of employees known as reduced-hour to the existing classifications of temporary and full-time employees. Reduced-hour employees resembled full-time employees in that both received identical benefits, both were employees-at-will, and both were hired with the understanding "that they would remain with PRUPAC for an indefinite period of time." Brief in Support of Defendant's Motion for Summary Judgment at 2 ("Defendant's Summary Judgment Brief"). The primary difference was that reduced-hour employees worked fewer hours each week than full-time employees. All but one of the plaintiffs were originally hired as temporary employees and later became reduced-hour employees. Plaintiff Dolphin was hired as a reduced-hour employee.

In 1979, PRUPAC abolished the job classification of reduced-hour employees. It

did, however, permit those employees already in that classification to remain as such. PRUPAC claims that this decision was "because it became economically unfeasible for it to continue such a classification." Defendant's Summary Judgment Brief at 4. All reduced-hour employees were given the opportunity to become full-time employees. Plaintiffs opted not to accept that offer nor to change their status at any subsequent time. PRUPAC began to reduce its work force in 1982 because of "a severe business downturn." *Id.* at 4. In August 1982, all temporary employees were terminated. Full-time employees performed the additional work created by this action. As of April, 1983, all reduced-hour employees were also fired. At that time there were eight reduced-hour employees— all women over the age of forty. Defendant also discharged sixteen full-time employees because of poor performance. *See* Plaintiffs' Trial Brief at 4–6.

*Discussion*

Defendant has moved for summary judgment. Defendant's brief in support of this motion cites numerous excerpts from deposition testimony. PRUPAC also submitted a statement of facts pursuant to Rule 12G. Plaintiffs submitted a brief opposing summary judgment that extensively cites plaintiffs' trial brief. Plaintiffs also submitted affidavits from each plaintiff and an affidavit from their counsel, Richard L. Press.

The standard for granting summary judgment is a stringent one. Fed.R.Civ.P. 56(c) provides that summary judgment may be granted only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hersh v. Allen Prods. Co., Inc.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Insurance Co.,* 721 F.2d 118 (3d Cir.1983). In deciding whether an issue of material fact does exist, the court is required to view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 (3d Cir.1983); *Knoll v. Springfield Township School District,* 699 F.2d 137, 145 (3d Cir.1983);

*Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). However, "the party resisting a motion for summary judgment may not rest upon mere allegations of his pleadings, his response must set forth specific facts showing that a genuine issue for trial exists." *Watkinson v. Great Atl. & Pac. Tea Co., Inc.,* 585 F.Supp. 879, 882 (E.D.Pa.1984).

The Supreme Court recently stated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted).

### I. DISCRIMINATION CLAIMS (COUNTS ONE AND TWO)

In count one plaintiffs charge PRUPAC with violating Title VII and the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* Count two alleges violation of ADEA as well as N.J.S.A. 10:5–3. In count one, which is incorporated into count two, plaintiffs allege several "unlawful employment practices." Defendant's motion, although labeled as a general motion for summary judgment, only addresses the charge of discrimination in PRUPAC's decision to discharge all members of the reduced-hour classification. Similarly, plaintiffs' response focuses solely on the alleged discrimination in the discharge decision. Regarding this motion, neither party discusses the other enumerated practices which plaintiffs claim in the complaint are unlawful employment practices. These include the following: "A. Failing to recruit and hire named Plaintiffs for management positions because of their sex; C. Failing to transfer and promote named Plaintiffs because of their sex; D. Failing to transfer and promote named Plaintiffs because of their age; E. Maintaining policies and practices with respect but not limited to wages, job assignments and other terms and conditions of employment which unlawfully operated to deny equal opportunities

to named Plaintiffs because of their sex and age; F. Maintaining policies and practices which utilize subjective non-employment related criteria in promotion decisions, which criteria operates disparately to effect adversely named Plaintiffs because of their sex and age respectively; G. Failing to recruit the substantial exclusion of named Plaintiffs from higher paying job categories including supervisory and administrative positions because of their sex and age respectively; H. Failing and refusing to take affirmative action to correct the effects of discriminatory policies and practices complained of herein." Complaint at 7–8. As defendant only addresses the charge of age and sex discrimination in defendant's creation and termination of the class of reduced-hour employees, the court will consider the summary judgment motion as applying to that charge only and will not rule on the above claims.

Because the provisions of the ADEA parallel those of Title VII, many courts have applied the principles of Title VII to cases involving age discrimination. *See Dreyer v. ARCO Chemical Co.,* 801 F.2d 651 (3d Cir.1986); *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d 253, 256 (3d Cir.1986); *Massarsky v. General Motors Corp.,* 706 F.2d 111, 117 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Douglas v. Anderson,* 656 F.2d 528, 531–32 (9th Cir.1981); *Rodriguez v. Taylor,* 569 F.2d 1231, 1239 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). As stated in *Massarsky,*

A Title VII plaintiff may prosecute his claim under either of two distinct legal theories. First, he may allege that he is the victim of intentional discrimination, i.e., that his employer applied an expressly race-based or sex-based standard in its treatment of the plaintiff. This "disparate treatment" theory traces its roots to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973). Alternatively, he may rely upon the so-called "disparate impact" theory of *Griggs v. Duke Power Co.,* 401 U.S. 424, [91 S.Ct. 849, 28 L.Ed.2d 158] (1971).

This theory applies when the employer's adverse action resulted not from any discriminatory motive but simply from application of facially neutral criteria that are alleged to have a disproportionate impact on members of the protected class and which cannot be justified by business necessity. *See Dothard v. Rawlinson,* 433 U.S. 321, 329, [97 S.Ct. 2720, 2726, 53 L.Ed.2d 786] (1977).

706 F.2d at 117.

■ In the case at bar plaintiffs have alleged violations of Title VII and ADEA under both of these theories, disparate treatment and disparate impact. While the Third Circuit has applied the *McDonnell Douglas* Title VII test for disparate treatment to ADEA, *see Dreyer v. ARCO, supra,* it has not stated whether one can recover under ADEA having proven disparate impact alone. *See Massarsky,* 706 F.2d at 120; *EEOC v. Westinghouse Elec. Corp.,* 632 F.Supp. 343, 370 (E.D.Pa.1986). However, at least five other Circuit courts have held that the disparate impact test applies to ADEA. *See, e.g., EEOC v. Bordens, Inc.,* 724 F.2d 1390 (9th Cir.1984); *Leftwich v. Harris-Stowe State College,* 702 F.2d 686 (8th Cir.1983); *Allison v. Western Union Telegraph Co.,* 680 F.2d 1318 (11th Cir.1982); *Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). In addition, several district courts in the Third Circuit have held similarly. *See EEOC v. Westinghouse, supra; Woodfield v. Heckler,* 591 F.Supp. 1390, 1397 (E.D.Pa.1984); *Popko v. Clairton,* 570 F.Supp. 446, 451 (W.D.Pa.1983); *Grecco v. Spang & Co.,* 527 F.Supp. 978 (W.D.Pa. 1981). This court joins the above courts and will apply the Title VII disparate impact test to ADEA. The court will thus consider plaintiffs' claims of sex discrimination and age discrimination under both the disparate treatment and disparate impact tests.

## A. Disparate Treatment

According to *Smithers v. Bailar,* 629 F.2d 892, 898 (3d Cir.1980), in a disparate

treatment case, the plaintiff has the burden to prove that his treatment was caused by purposeful or intentional discrimination. The plaintiff need not prove that age or sex was the employer's "sole or exclusive" consideration; he must, however, prove by a preponderance of the evidence that it made a difference in the decision to discharge him.

■ The test to apply is the one set forth in *McDonnell Douglas.* The plaintiff has the initial burden to establish a prima facie case of unlawful discrimination. To do this, plaintiff must show that he is a member of the protected class and that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably. The burden then shifts to the employer to articulate "some legitimate, nondiscriminatory reason" for its treatment of the employee. *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. If the employer presents evidence of a lawful justification, the plaintiff must then show that this asserted reason "was merely a pretext for unlawful discrimination." *Massarsky, supra,* at 118. The burden of persuasion always remains with the plaintiff. All the defendant must do is introduce sufficient evidence to create a genuine factual issue concerning the existence of a legitimate justification for the discharge.

## 1. *Sex discrimination: Disparate Treatment*

■ Regarding the creation and ultimate termination of the reduced-hour classification, plaintiffs have not made a prima facie case of discriminatory treatment for reason of their sex. Plaintiffs, all women, are in a protected class under Title VII and it appears undisputed that plaintiffs were not discharged because they were deemed unqualified for their work. One stipulated fact in the Final Pre-Trial Order states that "The decision to terminate plaintiffs/employees was not based on any individual criteria. Neither their performance, work experience, job knowledge, skills or length of service were considered in the decision

to terminate any of the Plaintiff/employees." Final Pre-Trial Order at ¶ 15. The undisputed fact that plaintiffs were all offered full-time employment during their time at PRUPAC is further evidence that they were qualified for their jobs. However, plaintiffs have not set forth any facts to support the allegation that the male employees were treated more favorably. Considering all the facts presented to the court, and any possible inferences therefrom, in a light most favorable to the plaintiffs, the court holds that plaintiffs have not supported their allegation of discrimination based on sex. A mere assertion of discrimination unsupported by any facts is not sufficient to shift the burden to the employer to justify termination. *See Locke v. Commercial Union Ins. Co.,* 676 F.2d 205, 206 (6th Cir.1982) (affirming the district court's granting of summary judgment in an age discrimination case).

Regarding plaintiffs' claim of discrimination in creating the class of reduced-hour employees, plaintiffs assert no facts from which one could infer that the employees' gender had any relation to that decision. Defendant states that "There was nothing to preclude males or persons under 40 years of age from becoming reduced-hour employees from 1975 through 1979 and, indeed, many of them were, but became full-time employees prior to 1983." Defendant's Summary Judgment Brief at 13. Plaintiffs do not contest this. It appears uncontested that in 1983 only females remained in the class simply because only females opted not to accept defendant's offer to accept full-time employment.

In this case plaintiffs have stipulated to the following facts, "12. It is Defendant's employment policy that all applicants for employment are considered on the basis of their individual merits without regard to age or sex. 13. Defendant, through their agents and employees, prior to the date of Plaintiff/employee's termination permitted each Plaintiff to post for full time positions with the Defendant. 15. The decision to terminate Plaintiffs/employees was not based on any individual criteria...." Final

Pretrial Order at 6–7. William J. Belinski, then Vice-President of personnel, who implemented the recommendation to terminate the reduced-hour employees, "did not know the names, sexes or ages of any of the persons in the reduced-hour classification at CARSO at the time he made the decision, but acted on the basis of the lack of organizational need for the classification itself." Defendant's Summary Judgment Brief at 6. Defendant states that "The terminations at CARSO included male employees ... and among the employees retained were female employees." *Id.* at 7.

Nothing in the affidavits submitted by plaintiffs contests these statements or provides any information upon which one could infer any sex discrimination. In fact, many of the plaintiffs' statements support defendant's contention that it did not intend to discriminate. In each affidavit the plaintiffs state who remained after the firing. None state that most of those retained were male, they all focus on the issue of age. The ones that do discuss the gender of those retained state that women were retained. Ann Dolphin states that "the persons who remained in [the Billing] Department after my termination were younger women." Affidavit of Ann Dolphin at 3. According to Jule Bonner, working in the Micrographic Department, "on the basis of my observations, there were only younger girls working within that Department who remained in that Department." Affidavit of Jule Bonner at 2. (Plaintiff Kathleen Burness was also in the Micrographic Department.) The court will thus grant defendant's motion for summary judgment on the charge of *intentional* discrimination on the basis of sex in creating and subsequently terminating the class of reduced-hour employees.

### 2. *Age Discrimination: Disparate Treatment*

■ Plaintiffs have established a prima facie case of age discrimination. Plaintiffs, all over 40 years of age, are in the protected class. (The protected class under ADEA is individuals ages 40 to 70.) As stated above, defendant does not contest that plaintiffs were qualified for their jobs. Third, plaintiffs have alleged that employees outside the protected class were retained. Plaintiffs state in their affidavits that many of the remaining employees were younger than they. *See* Supplemental Brief of Plaintiffs Opposing Summary Judgment; Plaintiffs' Affidavits.

The burden thus shifts to defendant to present evidence that the decision to terminate all reduced-hour employees was a nondiscriminatory one. Defendant contends that the decision to eliminate the reduced-hour classification was purely a business judgment "based upon organizational need, business considerations, and the desire to give the highest degree of consideration to satisfactory full-time employees." Defendant's Summary Judgment Brief at 6, citing depositions of Taylor and Belinski.

Plaintiffs must then prove by a preponderance of the evidence their claim that this justification is a mere pretext for a discriminatory decision.

■ To recover under ADEA, "a plaintiff must prove by a preponderance of the evidence that age was a determinative factor in the employer's decision." *Dreyer v. ARCO, supra,* at 653, citing *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.,* 789 F.2d 253, 256 (3d Cir.1986). Under ADEA, age need not be the sole consideration motivating the employer's decision. Defendant presents a fact from which one can infer that age was a consideration in the decision to discharge plaintiffs. Plaintiffs' trial brief states that "defendant issued confidential 'surplus staff' memorandums which listed 26 persons, including the 8 reduced hours. These confidential surplus staff memos are attached hereto as Exhibit 1. Significantly, there are check marks noted next to the dates of birth for each of the reduced hour employees." Plaintiffs' Trial Brief at 6. From this fact, one can reasonably infer that age may have been a determinative factor in the decision to discharge plaintiffs.

■ This court in deciding defendant's motion for summary judgment is not a trier of fact. It merely considers all facts in the

light most favorable to the nonmoving party. Whether age was a determinative factor in defendant's decision to fire plaintiffs is a material issue of fact. There is a genuine dispute regarding that issue. Defendant cites depositions stating that age was not a factor. Plaintiffs submit a memo suggesting that age may have been a consideration. The court must therefore deny defendant's motion for summary judgment on plaintiffs' charge of age discrimination under the theory of intentional discriminatory treatment because there are genuine issues of material fact in dispute: whether age was a determinative factor in the decision to terminate plaintiffs' employment and whether defendant's justification was merely a pretext.

### B. Disparate Impact

■ Courts have adopted a different test for claims of violations of Title VII and ADEA under the theory of disparate impact. A defendant can violate those Acts even if he applies a facially neutral rule if the result of such application has a disparate impact on a protected class. *See Griggs v. Duke Power Co., supra.*

Again turning to *Massarsky*, the Third Circuit stated that.

> To establish a prima facie case under the disparate impact model, plaintiff must show "that the facially neutral employment practice had a significantly discriminatory impact." *Connecticut v. Teal,* [457] U.S. [440], [448], 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982). "If that showing is made, the employer must then demonstrate that 'any given requirement [has] a manifest relationship to the employment in question,' in order to avoid a finding of discrimination.... Even in such a case, however, the [employee] may prevail, if he shows that [the] employer was using the practice as a mere pretext for discrimination. It is apparent, however, that the employer's burden of justifying the employment practice does not arise until after the

plaintiff has made out a prima facie case."

706 F.2d at 120 (citations omitted).

### 1. Sex discrimination: Disparate Impact

Plaintiffs contend that they were discriminated against on the basis of sex because the decision to eliminate the reduced-hour employees had a disproportionate impact on women. Unfortunately, the record presented by plaintiffs and defendant is wholly inadequate to enable the court to decide this claim on a motion for summary judgment.

■ The only fact plaintiffs present to support this allegation is that the reduced-hour classification consisted of eight women. Plaintiffs do not state how many employees were retained; how many of those retained were men; nor how many of the total number discharged were men. Plaintiffs have thus made out the barest prima facie case. In defendant's motion for summary judgment, the only information defendant adds is the following: "The terminations at CARSO included male employees and employees under 40 years of age. P. Lewis Tr. at 85. Among the employees retained were female employees and employees over 40 years of age. Jule Bonner Tr. at 56–57." Defendant's Summary Judgment Brief at 7. Beyond these bare minimum of facts, each side argues in conclusory terms: plaintiffs, that there was a disproportionate impact, and defendant, that there was no disproportionate impact. The court has absolutely no idea what percent of the work force was discharged and what percent of those discharged were women. A motion for summary judgment is inappropriate at this time.

With the above scanty set of facts, the court cannot decide as a matter of law that there was or was not a disparate impact on women. The court will thus deny defendant's motion for summary judgment without prejudice.

### 2. *Age discrimination: Disparate Impact*

Plaintiffs submit a more complete record to support the claim of age discrimination. Plaintiffs in their affidavits state that they each are members of the protected class under ADEA as they are all over 40 years of age. In addition, plaintiffs state facts from which it would be reasonable to infer that there was a disparate impact on those in the protected class. The court notes the following statements:

At the time of my termination, I was in the Post Issue Department. There were approximately 10 people in that Department including Ethel Warner and I. I believe that Ethel was the most senior in years of service and of age in that Department and I was one of the 3—4 most senior people in years of service and in age. Most of the people who remained in that Department were younger persons. Nancy Reilly Affidavit at 2.

At the time of my termination, I was in the Billing Department with approximately 8 other persons. I believe that I was the oldest person in that Department and that the persons who remained in that Department after my termination were younger women. Ann Dolphin Affidavit at 3.

At the time of my layoff ... I was working in the Micrographic Department with one other reduced hour employee, Ms. Burness. We were the oldest and most senior employees in that Micrographic Section. In fact, on the basis of my observations, there were only younger girls working within that Department who remained in that Department. I believe all these girls were well under 40 years of age. Jule Bonner Affidavit at 2; *see* Kathleen Burness Affidavit at 2.

At the time of my termination ... I was working in the Policy Service Department at Prudential. I believe that I was the oldest and most senior employee within this Department. Phyllis Lewis Affidavit at 2.

At the time of my termination I was in the New Business Department with approximately 18—20 other people. As I recall, I was either the most senior person there in years of service and in age or one of the top 3 in both seniority and in age. Most of the people who remained after my termination were far younger and far less senior than I. Edith Delcher Affidavit at 3.

In support of defendant's assertion that there was no disparate impact on persons over 40, defendant merely makes the above statement that some of those fired were under 40 and some of those retained were over 40.

In viewing the facts and any possible inferences therefrom in light most favorable to the nonmoving party, the court must deny summary judgment on the charge of age discrimination under the disparate impact theory.

## II. EQUAL PAY ACT (COUNT FOUR) AND INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIP (COUNTS TWO AND FOUR)

PRUPAC asserts that plaintiffs have failed to state a claim under the Equal Pay Act and that there is no cause of action in New Jersey for intentional interference with an advantageous economic relationship. *See* Defendant's Summary Judgment Brief. Plaintiffs respond as follows, "Equal Pay Act: Plaintiffs are not in opposition to this aspect of Defendant's Summary Judgment Motion.... Intentional Interference with an Advantageous Economic Relationship: Plaintiffs have no opposition to this aspect of Defendant's motion." *Id.* at 3, 4. Plaintiffs thus concede that they have no valid claims under the Equal Pay Act or the alleged tort of intentional interference with an advantageous economic relationship. The court will grant defendant's motion for summary judgment on these two counts. In addition, the court will grant defendant's request for costs, including attorneys' fees it expended in moving for summary judgment on these two counts.

## III. ERISA (COUNT THREE)

Plaintiffs charge defendant with violating "the rights of the named Plaintiffs to be free from retaliation under the Employment Retirement Income Security Act, §§ 502(a)(1)(b) and 502(e)(1)." Amended Complaint at 12. Ten years of employment at PRUPAC were required in order for benefits under the pension plan to vest. Plaintiffs claim that they were discharged in order to prevent them from attaining vested rights under the pension plan.

■ ERISA permits plans that do not vest until the passage of ten years but the statute in no way guarantees employees in those plans ten-year employment contracts. To prove that they were discharged to prevent vesting of pension rights, plaintiffs must prove that the motivating factor in their discharge was to prevent such vesting. Plaintiffs must show that defendant terminated their employment with the "specific intent" to interfere with their rights under the pension plan. *See Watkinson v. Great Atlantic & Pacific Tea Co., supra* at 883. Plaintiffs need not show that intent to deprive of pension rights was the employer's sole consideration, only that it was a motivating factor. *See Titsch v. Reliance Group Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd.*, 742 F.2d 1441 (2d Cir.1983).

In the case at bar, plaintiffs' pension benefits would have vested as follows: Dolphin, 5 years and 8½ months; Warner, 1 year and 6 months; Burness, 1 year and 8½ months; Bonner, 1 year and 8½ months; Reilly, 1 year and 5 months; Delcher, 1 year and 6 months; Lewis, 1 year and 7 months. *See* Stipulated Facts in Final Pre-Trial Order.

Plaintiffs respond to defendant's motion for summary judgment on this point with merely one sentence: "[T]he Plaintiffs' age, length of service and closeness in time of the vesting of their individual pensions, may raise an inference upon which a trier of fact can rely in establishing age discrimination." *Cleverly v. Western Elec. Co.*, 450 F.Supp. 507 (W.D.Mo.1978), *aff'd.*, 594 F.2d 638 (8th Cir.1979). It is true that in *Cleverly* the nearness to pension did raise an inference of age discrimination, but it did not support an inference of an ERISA violation. The key factor in supporting a claim of an ERISA violation was that there, the employee was expressly promised that he would be retained until his pension rights were to vest. Plaintiffs have not even alleged that such a promise was made in this case. In the other case cited by plaintiffs, *Anthony v. Ryder Truck Lines, Inc.*, 611 F.2d 944 (3d Cir.1979), the employer violated ERISA because he told the employee and the employee relied upon statements that credits from an old pension plan would be added to years under a new plan. Again, no such representations regarding pension were alleged in the instant case.

■ Plaintiffs have offered no factual evidence to support even an inference that PRUPAC, in discharging plaintiffs, was motivated in part by the desire to deprive them of their pension rights. In addition, plaintiffs have stipulated to the following fact, "The decision to terminate Plaintiffs/employees was not based on any individual criteria. Neither their performance, work experience, job knowledge, skills or *length of service* were considered in the decision to terminate any of the Plaintiffs/employees." Joint Final Pre-trial Order at ¶ 15 (emphasis added). Plaintiffs state, "It is admitted that there was no specific time frame given to Plaintiffs as to how long they could remain with Prudential." Plaintiffs' Opposition to Summary Judgment at 3. Defendant states that it eliminated the reduced-hour classification a part of an overall reduction in force made necessary by a severe business downturn. *See* Defendant's Summary Judgment Brief at 5, citing Donnelly Tr. at 17, 49.

ERISA does not guarantee an employee a job until pension vests. If plaintiff were to prevail on this claim, any employee discharged even close to six years before pension vesting could similarly allege an ERISA violation. For the above reasons, the court will grant defendant's motion for summary judgment on plaintiff's ERISA claim.

## IV. WRONGFUL DISCHARGE (COUNT FIVE)

Plaintiffs complain that their terminations "created the tort of wrongful discharge." Plaintiffs were employees-at-will. Their employments were for an indefinite period; they could resign from their jobs at any time, Edith Delcher Tr. at 24; P. Lewis Tr. at 68; K. Burness Tr. at 50; N. Reilly Tr. at 82; and were given no promises of continued employment or limitations upon PRUPAC's right to discharge them. P. Lewis Tr. at 69; K. Burness Tr. at 51; N. Reilly Tr. at 82–83; Edith Delcher Tr. at 26.

Unless an employee-at-will identifies a violation of a specific expression of public policy, he or she may be discharged with or without cause. "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980). Plaintiffs herein do not even allege a specific public policy violation.

Plaintiffs argue that they have a wrongful discharge cause of action under the theory of equitable estoppel. They contend that they relied in good faith on defendant's statement that they could remain as reduced-hour employees throughout their employment.

The court will grant defendant's motion for summary judgment on this issue. First, plaintiffs' equitable estoppel argument does not satisfy the test set forth in *Woolley v. Hoffmann-La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257 (1985). Plaintiffs have not argued that there was any PRUPAC employment manual which provided for employee job security or required PRUPAC to have just cause for any discharges. Second, it is not clear that PRUPAC's actions violated the alleged promise because PRUPAC *did* allow plaintiffs to remain as reduced-hour employees throughout their employment. Plaintiffs have not adequately asserted a claim that PRUPAC violated its right to discharge at-will employees.

## V. PLAINTIFFS' HUSBANDS' LOSS OF CONSORTIUM CLAIMS (COUNTS SEVEN THROUGH TWELVE)

Loss of consortium claims may only be maintained by a spouse for injury to his or her spouse arising from a tort. "The right of the spouse ... to recover will of course depend upon the existence of tortious conduct on the part of the defendant. Normally this means that there must be a tort for which an action might be maintained by the injured spouse...." W. Keeton, *Prosser and Keeton on The Law of Torts* § 125 (5th ed. 1984). Only if plaintiffs were to recover on their tort claims against defendant could there be any possible recovery by their husbands. Further, such recovery cannot be had on a claim founded solely on a spouse's economic loss. *Cappiello v. Ragen Precision Indus. Inc.*, 192 N.J.Super. 523, 532, 471 A.2d 432, 437 (1984).

Defendant's motion for summary judgment on the claims for loss of consortium will be granted. First, as the tort claims have been dismissed, there is no underlying tort on which the loss of consortium claim can rest. Second, all of plaintiffs' husbands testified that their claims are based upon the loss of income and benefits allegedly suffered by their wives because of their terminations. Ernest Delcher Tr. at 9; J. Reilly Tr. at 120–21; B. Lewis Tr. at 63–64; James Bonner Tr. at 7–8; R. Burness Tr. at 12.

The court will enter an appropriate order.

This matter having been brought before the court on Defendant's motion for summary judgment; and

The court having reviewed the submissions of the parties; and

For the reasons stated in this court's opinion filed this date;

IT IS on this 10th day of February, 1987, hereby

ORDERED that

1. The motion of defendant Prudential Property and Casualty Insurance Company for summary judgment is hereby GRANTED with prejudice as to the following claims: claim for violation ERISA (Count Three); claim for violation of Equal Pay Act (Count Four); wrongful discharge (Count Five); interference with Advantageous Economic Relationship (Count Six); loss of consortium (Counts Seven through Twelve); violation of Title VII and N.J.S.A. 10:5–1 *et seq.* under the theory of disparate treatment (portion of Count One).

2. Defendant's motion for summary judgment is hereby DENIED with prejudice as to the claim of violation of ADEA and N.J.S.A. 10:5–3 under both theories of disparate treatment and disparate impact (Count Two).

3. Defendant's motion for summary judgment is hereby DENIED without prejudice as to the following claims: violation of Title VII and N.J.S.A. 10:5–1 *et seq.* under the theory of disparate impact (portion of Count One); remainder of the charges in Count One not addressed by the parties on this motion.

4. Defendant is awarded costs and fees only for as regards the uncontested dismissal of Counts Four and Six. Other than that award, no costs.