Raymond J. BERNATOWICZ, Marilyn Bernatowicz his wife, and Kenneth Williams

v.

COLGATE–PALMOLIVE COMPANY.

Civ. A. No. 90–3001.

United States District Court, D. New Jersey.

March 10, 1992.

Alfred J. Hill, William E. Milks, Wilentz, Goldman & Spitzer, Woodbridge, N.J., for plaintiffs.

Brian J. Clark, Richard K. Muser, Clifton, Budd & De Maria, New York City, for defendant.

## OPINION AND ORDER

POLITAN, District Judge.

Plaintiffs Raymond Bernatowicz and Kenneth Williams worked as hourly employees at the now defunct Jersey City plant of the Colgate–Palmolive Company

("Colgate") for approximately 30 years, progressing from factory work to skilled labor during their employment. Bernatowicz was employed from 1952 until 1956 and from 1960 to 1988, and Kenneth Williams was employed for two brief periods of time between 1955 and 1959 and continuously from 1960 to 1988. Throughout their employment Williams and Bernatowicz were members of the Employees Association of Colgate–Palmolive Company ("Association"), the collective bargaining representative for all of the hourly employees at the Jersey City Plant.

In or about January 1985, Colgate announced its plans to commence the phasing down of operations at the Jersey City Plant. This Plant eventually closed on August 11, 1988, the same day as Bernatowicz' and Williams' last dates of employment. Soon after this announcement, Colgate conducted negotiations with the Association concerning a phase-down agreement. The phase-down agreement reached between the parties provided various forms of retirement benefits for the hourly employees, including plaintiffs. The phase-down agreement provided that employees whose years of age plus years of service totalled at least 85 points at the time the Jersey City Plant was closed were entitled to an undiscounted retirement annuity with payments commencing immediately upon retirement, along with lifetime continuation of medical benefits and life insurance (these benefits are hereinafter referred to as "85 point benefits"). Employees whose years of age plus years of service totalled at least 70 points, but were less than 85 points, could elect to either receive an annuity commencing as of the last date of employment which was reduced by ½ % for each month the employee was under age 55 or receive an undiscounted annuity by deferring the commencement of retirement benefits until reaching age 55 (these benefits are hereinafter referred to as "70 point benefits"). These employees also had their medical and life insurance coverage contin-

ued for a period of one year after their termination, as did all other employees.

In April 1987, plaintiff Bernatowicz was 51 years old and had worked for defendant for over 30 years. At that time, the total of his age and years of service was approximately 81 points. By August 1988, his total was approximately 83 points. In April 1987 plaintiff Williams was 51 years old and had worked for defendant for over 27 years. At that time, the total of his age and years of service was approximately 78 and one-half points. By August 1988, his total was approximately 80 and one-half points. Neither plaintiff would have qualified for retirement with 85 point benefits if years of service included only those periods of time in which plaintiffs actually worked for defendant.

In approximately March 1987 Howard Sponseller, Supervisor of Salaried Personnel, informed Bernatowicz that despite the fact that Bernatowicz did not work for defendant between 1956 and 1960, he would be able to "bridge" the time he did not work for defendant and would receive credit for the entire period of his employment from 1952 up to the close of the plant, a period of more than 35 years. This was Sponseller's interpretation of the Company's "break in service" rule—the rule governing how prior, separate periods of Colgate are treated in calculating pension eligibility. Sponseller also told Bernatowicz that since he was 51 years of age, his age and years of service exceeded 85 points and he was eligible to retire with a full pension and other benefits under the "85 point plan." Later in March, Mr. Fred McMenamin, an Association officer told Bernatowicz that he learned from Kevin Paradise, Employee Relations Manager of the plant, that Bernatowicz's retirement with 85 points was "verified."

In April 1987, Sponseller informed Bernatowicz that Mr. John E. Zoog, Director of the Company's Benefits Department,[1] had

1. Mr. Zoog was also, for all times relevant to this suit, a member of the Employee Relations Committee and the Pension Fund Committee. The Company's Retirement Plan designates the

"Employee Relations Committee" as the plan "administrator" of the retirement plan with "all such power, ... to construe or interpret the plan" and "to determine all questions of eligibil-

"overruled" his interpretation of the "break in service" rule upon which he had determined Bernatowicz qualified for 85 point benefits. Sponseller told Bernatowicz that: "[Zoog] is the big shot in New York that's in charge of all the benefits ... he is the one that makes the final decision." Sponseller nevertheless informed Bernatowicz he still believed his interpretation of the "break in service" rule was correct, and he planned to go to the Corporate Benefits Department in New York City to find a "precedent" for his interpretation. Sponseller went to the Benefits Department where he learned that he had been mistaken as to the operation of the break in service rule. Thereafter, around August, 1987, Sponseller told Bernatowicz that Bernatowicz did not qualify for "85 point" benefits.

In April 1987, Sponseller explained his interpretation of the break in service rule to plaintiff Williams. Williams maintains that Sponseller said you get "all the time between day one and everything in between." Under this interpretation, Williams would have qualified for 85 point benefits. In August 1987, however, Sponseller told Williams that Williams could not retire with 85 point benefits.

Sponseller's earlier statements to plaintiffs regarding the break in service rule were incorrect. Prior to 1986, the Retirement Plan's "Break in Service" rule provided that prior, separate periods of Colgate employment would be included, or "bridged," in calculating pension eligibility, only where (i) the employee's break in service did not exceed five years, and (ii) the period of prior Colgate employment exceeded the length of the "break in service." In or about January 1986, the Employee Relations Committee liberalized the "break in service" rule for hourly employees of the Jersey City Plant by crediting all periods of employment with the Company regardless of the length of the prior period of Colgate employment or the length of the "break."

Contrary to Sponseller's assertions, the break in service rule never worked to credit the period of the break as Company service. It only serviced to bridge or connect separate periods of Colgate employment. Therefore, plaintiffs could not bridge time they had not worked for defendant and were not eligible to retire under the 85 point plan.

Plaintiffs contend that they relied on Sponseller's erroneous representations regarding the break in service rule and missed opportunities to transfer to other positions with the company. For example, both plaintiffs maintain that they would have attempted transferring to Colgate's Essential Oils facility in Burlington New Jersey when that plant was accepting applications had they not been mislead about retirement. Also, Bernatowicz asserts that he would have been interested in pursuing a position at Colgate's Instrumentation Shop at its Kansas City plant had he not been told he could retire with 85 point benefits.

Bernatowicz and Williams qualified for 70 point benefits. They elected to commence the receipt of their retirement payments immediately following their last dates of employment, August 11, 1988. Since then, Bernatowicz has been receiving monthly pension payments of $2,091.00 while Williams has been receiving monthly payments of $1,529.00. Bernatowicz received a severance payment in excess of $55,000.00 while Williams received a severance payment of over $30,000.00. Both were provided free medical and life insurance during the year following their layoffs.

On July 30, 1990 plaintiffs filed a complaint in the District Court of New Jersey against Colgate. While the factual allegations made by Bernatowicz and Williams differ somewhat they are similar in nature and their causes of action against Colgate are the same: (1) for breach of fiduciary

---

ity and to compute the amount and determine the method of payment of any benefits...." The Benefits Handbook, which Colgate distributed to Bernatowicz and Williams, notifies employees that the Employee Relations Committee is the "administrator" of the Retirement Plan, and provides the committee's address and telephone number. The Benefits Handbook also provides the address and telephone number of Mr. Zoog.

duty in violation of § 404(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), as well as for failure to remedy the breaches of co-fiduciaries in violation of ERISA § 405(a)(2) & (3); and (2) for negligent misrepresentation. Plaintiff Marilyn Bernatowicz's sole claim is for loss of consortium. In their opposition brief for this motion, plaintiffs conceded that their equitable estoppel claim in the Sixth Count of their complaint was preempted by ERISA.

Defendant maintains that it is entitled to summary judgment on plaintiffs' remaining claims. With respect to plaintiffs' claims for negligent misrepresentation, defendant asserts that the claims are preempted by ERISA or, in the alternative, that plaintiffs cannot establish several of the essential elements of the *prima facie* case. Defendant raises several arguments in support of its contention that summary judgment should be granted dismissing plaintiffs' claims for breach of fiduciary duty under ERISA: 1) plaintiffs are unable to establish a claim for breach of fiduciary duty; 2) plaintiffs failed to exhaust administrative remedies; 3) plaintiff Bernatowicz' claim is barred by the statute of limitations. Defendant's contention that plaintiffs are unable to establish a claim for breach of fiduciary duty is based on three grounds: 1) that a fiduciary was not engaged in a fiduciary duty; 2) that plaintiffs cannot establish the necessary element of bad faith conduct; and 3) that the nature of plaintiffs' claims and the relief sought cannot give rise to an action under ERISA.

The parties conducted discovery which included written interrogatories and document requests. Plaintiffs deposed Colgate's witness Ted Wheeler, while defendant deposed the three plaintiffs. During those depositions, the parties supplied, and the witnesses identified, a number of documents. Both sides have submitted experts' reports as to Bernatowicz' and Williams' potential damages.

Under Rule 56, summary judgment may only be granted if, drawing all inferences in favor of the nonmoving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3rd Cir.1987). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. *Id.* Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue of trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The court will first address plaintiffs' claims for negligent misrepresentation. A claim for negligent misrepresentation may exist under New Jersey law when "a party negligently provides false information" or "fail[s] to provide information it had a duty to disclose." *Karu v. Feldman*, 119 N.J. 135, 146–48, 574 A.2d 420 (1990) (citations omitted). In *Berry v. Playboy Enterprises, Inc.*, 195 N.J.Super. 520, 480 A.2d 941 (App. Div.1984), *certif. denied*, 99 N.J. 231, 491 A.2d 720 (1985), the Appellate Division applied the tort of negligent misrepresentation to the employment context in a case similar to the present one. In that case, the plaintiff, Carolyn Berry, alleged that when she was hired by the defendant corporation, she was advised to accept employment as an hourly employee rather than a salaried employee. The employer failed to inform her, however, that as an hourly employee she would not receive immediate medical benefits, while as a salaried employee she would receive immediate medical benefits. Plaintiff incurred medical expenses during the period in which she did not receive medical benefits. The court found that plaintiff had pleaded a *prima facie* case of negligent misrepresentation but that there were several issues properly reserved to the trier of fact which preclud-

ed summary judgment. The court did not address the issue of ERISA preemption.

In the present case, defendant argues that there are no material issues of fact precluding summary judgment in its favor because plaintiffs cannot establish several of the essential elements of the *prima facie* case. I need not address this argument, because plaintiffs' state law claims are clearly preempted by ERISA. The preemption clause of ERISA, § 514(a), 29 U.S.C. § 1144(a) provides that ERISA supersedes all state laws insofar as they relate to an employee benefit plan. In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court determined that the phrase "relate to" should be given a broad common-sense meaning. *Id.* at 47, 107 S.Ct. at 1553. "A state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985)). The Supreme Court has cautioned, however, that "some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 101 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

The Second Circuit in *Aetna Life Insurance Company v. Borges*, 869 F.2d 142 (2d Cir.1989) reviewed numerous ERISA preemption cases and developed a general test which could be applied to determine whether a cause of action was preempted or not:

> Generalizing from these cases, we find that laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory

authority—whose effect on ERISA plans is incidental.

*Id.* at 146.

The gravamen of Bernatowicz' and Williams' claims for negligent misrepresentation is that Sponseller, by misinterpreting a modification of the Retirement Plan's break in service rule, incorrectly informed plaintiffs that they were eligible for 85 point benefits. Due to these representations, Bernatowicz and Williams "lost the opportunity to secure a position [at another Colgate facility] and to perfect [their] pension rights." Plaintiffs argue that their negligent misrepresentation claims are not preempted by ERISA because Bernatowicz and Williams are not challenging a determination of their eligibility for pension benefits or attempting to reverse a pension plan's denial of benefits. Rather, they are seeking "general tort damages for the lost opportunities they suffered as a result of the misrepresentations made by defendant's agent." According to plaintiffs, the subject of pension plan rights are only incidental to plaintiffs' negligent misrepresentation claims.

I disagree with plaintiffs' contention that their claims do not relate to an ERISA plan. A review of the Supreme Court's reasoning in *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) illustrates why this is so. In *McClendon*, the Court deemed preempted a claim that an employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to or paying benefits under the employee's pension fund. The Court reasoned that:

> The [wrongful termination] cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan. ... [T]he cause of action "allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." Thus, in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had

a pension-defeating motive in terminating the employment. Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s] to" an ERISA plan. *Id.* 111 S.Ct. at 483.

■ The causes of action for negligent misrepresentation in this case are premised on the existence of a pension plan; the claims arise solely from representations over the Retirement Plan's break in service rule and eligibility for 85 point benefits. For plaintiffs to prevail, the court must find, *inter alia,* that the defendant, through its agent, made misrepresentations concerning terms of the plan. On the issue of liability, therefore, the court's inquiry must be directed to the plan.

The court's attention must also be focused on the plan to fix damages. Although plaintiffs assert that they are not challenging a determination of their eligibility for pension benefits or attempting to reverse a pension plan's denial of benefits, lost benefits are clearly a component of the recovery plaintiffs seek from Colgate. The respective counts of the complaint which assert the negligent misrepresentation claims of Bernatowicz and Williams specifically aver that they have "lost benefits and will continue to lose benefits in the future...." Further, expert reports submitted by plaintiffs set out "85 point" benefits—the benefits Sponseller allegedly informed plaintiffs they would receive which they otherwise do not qualify for—as a major component of the damages they seek in this litigation.[2]

Reviewing the facts before me with reference to the Supreme Court cases that have considered ERISA preemption, I find that ERISA preempts plaintiffs' claims for negligent misrepresentation. *See also Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923 (3rd Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991) (ERISA preempted state law claim for misrepresentation). My conclusion is also supported by the Second Circuit test for deter-

mining whether a case is preempted. Bernatowicz' and Willams' claims for negligent misrepresentation refer specifically to the ERISA plan and are essentially alternative claims to collect benefits that are protected by ERISA. These benefits are sought from Colgate which, plaintiffs allege, was a fiduciary under ERISA for the purpose of informing and advising employees of their options and rights under the 85 point plan.

Plaintiffs primarily rely on two cases to support their position that ERISA does not preempt their state law claims: *Greenblatt v. Budd Co.,* 666 F.Supp. 735 (E.D.Pa.1987) and *Hartle v. Packard Electric,* 877 F.2d 354 (5th Cir.1989). The facts in *Hartle* are distinguishable from the case at bar. There, the existence of a benefits plan was being used to support plaintiff's claim that he had an implied contract of employment with the defendant. That case, involved no representations concerning the terms of the plan. Nor were the terms of the plan integral to determining plaintiffs' common law claim. *Greenblatt,* on the other hand, is not critically distinguishable from the present case; however, I decline, as did the Seventh Circuit in *Lister v. Stark,* 890 F.2d 941 (7th Cir.1989), to follow *Greenblatt* here. Accordingly, summary judgment is granted dismissing counts two and five of the complaint.

■ Summary judgment is also granted dismissing plaintiffs' claims for breach of fiduciary duty under ERISA. Plaintiffs seek to assert claims against defendant for breach of fiduciary duty based upon alleged violations of ERISA & 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) and ERISA § 405(a)(2) & (3), 29 U.S.C. § 1105(a)(2) & (3), for failure to remedy the breaches of fiduciaries. The Third Circuit Court of Appeals has held that to establish liability for breach of fiduciary duty, the plaintiff must prove willful or bad faith conduct. *Burke v. Latrobe Steel Co.,* 775 F.2d 88, 91 (3rd Cir.1985). Specifically, the court stated:

> [A] pensioner does not establish a violation of fiduciary duty simply by showing

---

**2.** Even if plaintiffs were not seeking pension benefits "it is no answer to a preemption argument that a particular plaintiff is not seeking

recovery of pension benefits." *Id.* 111 S.Ct. at 486.

that the administrator did not follow the terms of the plan. If such action is undertaken pursuant to a good faith, albeit erroneous, interpretation, ERISA's fiduciary provisions are not violated. To establish liability, willful or bad faith conduct must be proved.

*Id.* (citing *Challenger v. Local Union No. 1,* 619 F.2d 645 (7th Cir.1980) ("trustees do not breach their fiduciary duties by interpreting the plan in good faith, even if their interpretation is later determined to be incorrect").

 In *Burke,* the court determined that pensioners' complaint alleging that the pension plan administrator willfully terminated their pensions solely to meet its needs as an employer made a sufficient averment of bad faith to state a claim for violation of ERISA's fiduciary provisions. Unlike the *Burke* plaintiffs, Bernatowicz and Williams have neither alleged nor produced any evidence of bad faith conduct by Colgate. Rather, the evidence in this case shows Sponseller's misinforming plaintiffs about their eligibility of 85 point benefits was based on a misinterpretation the company's recently amended break in service rule. Plaintiffs here are attempting to take advantage of Sponseller's mistake which, upon discovery, was quickly corrected. I therefore find that plaintiffs are unable to assert a *prima facie* case for breach of fiduciary duty.[3] Accordingly, the court dismisses counts one and four of the complaint.

It may seem a somewhat curious result that plaintiffs are both prevented from asserting common law claims due to ERISA's preemptive scope, while, at the same time being unable to establish any cause of action thereunder. While my holding here will leave plaintiffs without a remedy, "the availability of a federal remedy is not a prerequisite for federal preemption." *Lister v. Stark,* 890 F.2d 941, 946 (7th Cir. 1989). As the Supreme Court noted, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of oth-

ers under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law the Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987).

 Marilyn Bernatowicz' claim for loss of consortium, set forth in count three of the complaint, is also dismissed. This claim depends upon, and is solely derived from, her spouse's causes of action. *Reilly v. Prudential Property and Cas. Ins. Co.,* 653 F.Supp. 725, 735 (D.N.J.1987).

In sum, defendant's motion for summary judgment is GRANTED. Plaintiffs' complaint is DISMISSED IN ITS ENTIRETY. SO ORDERED:

---

**3.** Because the court is dismissing plaintiffs' ERISA causes of action on this ground, it is not necessary to consider whether plaintiffs have

exhausted their administrative remedies or whether plaintiff Bernatowicz' claim is barred by the statute of limitations.